## Case No. 16,492.

### UNITED STATES v. THOMPSON.

[1 Summ. 168.] [1]

Circuit Court, D Massachusetts. May Term, 1832.

SEAMEN—ENDEAVOR TO MAKE REVOLT — CONFINING MASTER—INDICTMENT—JURISDICTION.

1. In an indictment, founded on the crimes act of 1790, c. 9, § 12 [1 Stat. 115], for an endeavor to commit a revolt, and for confining the master of the ship on the high seas, it is not necessary to allege, that the master was at the time in the peace of the United States, or that he was an American citizen.

2. A cooper of the ship is a seaman within the provisions of the act.
[Cited in The Mary Elizabeth, 24 Fed. 397.]

3. The jurisdiction to try the offence attaches, under the 8th section of the act of 1790 (chapter 36), to the district into which the offender is first brought, or in which he is apprehended, in the alternative. So that the trial may be in either district.
[Disapproved in U. S. v. Bird, Case No. 14,-597.]

4. An endeavor to commit a revolt may be complete, as an offence within the act, by stirring up, or encouraging, or combining with any others of the crew to produce a disobedience to any one lawful order of the master or officers.

5. A confinement of the master may be complete within the act, by any moral, as well as by a physical restraint of the master, which prevents his free movements and command of the ship. But it must in either case be an illegal restraint: for it is not an offence for the seamen to confine the master for a justifiable cause, or in a justifiable self-defence.
[Cited in Lander v. U. S., Case No. 8,039; The Mary Ann, Id. 9,194; U. S. v. Huff, 13 Fed. 641.]

Indictment for an endeavor on the high seas to commit a revolt on board of the ship Maine by the defendant [John M. Thompson], who was alleged to be a seaman on board; second count, for confining the master of the said ship; against the crimes act of 1790 (chapter 9, § 12). Plea, not guilty. At the trial it ap-

peared in evidence, that the ship was a whale ship belonging to American citizens, and the defendant shipped as cooper for the voyage. It appeared by the shipping articles signed by the defendant, that the agreement was between the "owners, master, and mariners of the ship." It began by stating, "In consideration &c., we, the said seamen and mariners will perform a whaling voyage &c., promising to do and perform the duty of seamen as required by the master by night and by day on board of the said ship." It was proved by witnesses, that the cooper in such voyage, besides coopering, is required to hand sails, reef, steer, stand watch, and do other ship's duty of seamen on board. The offences were, if at all, committed in August, 1830. The vessel arrived at Stonington in Connecticut from the voyage, on Friday, the 8th of February, 1832; and from thence sailed to New Bedford, and arrived there on Monday following. The defendant was then arrested and committed for trial.

Mr. Bassett (of New Bedford), for defendant, contended, (1) That a cooper was not a seaman within the meaning of the act of 1790. (2) That the indictment was not found in the proper jurisdiction, but ought to have been in Connecticut, where the ship first arrived. (3) That it was not alleged in the indictment, that the master at the time of the offence was in the peace of the United States. (4) That the master is not alleged in the indictment to be an American citizen.

Mr. Dunlap, Dist. Atty., for the United States, on the first point, cited 1 Ld. Raym. 632.

STORY, Circuit Justice. As to the first objection, it appears to us wholly unfounded. A "cooper" is a seaman in contemplation of law, although he has peculiar duties on board of the ship. He is so treated in the shipping articles; and he is, like common seamen, bound to do ordinary ship's duty, such as standing watch, assisting in navigation, handing sails, &c. He receives an extraordinary compensation for his duties as cooper, not as superseding but as adding to the common seaman's duties. A cook and steward are seamen in the sense of the maritime law, although they have peculiar duties assigned them. So a pilot, a surgeon, a ship-carpenter, and a boatswain, are deemed seamen, entitled to sue in the admiralty. See Ross v. Walker, 2 Wils. 264; Wheeler v. Thompson, 2 Strange, 707; Ragg v. King, Id. 858. As to the second objection, the language of the crimes act of 1790 (chapter 36, § 8) is, that "the trial of crimes committed on the high seas, or in any place out of the jurisdiction of any particular state, shall be in the district, where the offender is apprehended, or into which he shall first be brought." The provision is in the alternative; and therefore the crime is cognizable in either district. And there is wisdom in the provision; for otherwise, if a ship

---

[1] [Reported by Charles Sumner, Esq.]

should, by stress of weather, be driven to take shelter temporarily in any port of the Union, however distant from her home port, the master and all the crew, as well as the ship, might be detained, and the trial be had far from the port to which she belonged, or to which she was destined. And if the offender should escape into another district, or voluntarily depart from that, into which he was first brought, he would, upon an arrest, be necessarily required to be sent back for trial to the latter. Now, there is no peculiar propriety, as to crimes committed on the high seas, in assigning one district rather than another for the place of trial, except what arises from general convenience; and the present alternative provision is well adapted to this purpose. As to the third and fourth objections, they do not appear to the court well founded. The statute contains no descriptive words, that the master shall be in the peace of the United States, or shall be a citizen of the United States at the time, when the offence is committed; and it is not generally necessary to aver more facts than are sufficient to constitute the offence in the terms of the statute. But these objections, if they are well founded, are open upon the record upon a motion in arrest of judgment. Objections overruled.

STORY, Circuit Justice (charging jury). The indictment contains two counts. The first is for an endeavour to commit a revolt on board the ship. Without pretending to enumerate all the cases, which may constitute such an offence, it is sufficient to say, with reference to the facts of the present case, that a mere disobedience of orders by a seaman without encouraging, or aiding, or co-operating with others in the same act, is not an endeavour to commit a revolt. An endeavour to commit a revolt may be complete, not merely by stirring up, encouraging, or combining with others of the ship's crew to produce a general disobedience of all orders; but also by stirring up, encouraging, or combining with any one or more of the crew to produce a deliberate disobedience to any one lawful order of the master or other officers; for to this extent it is an endeavour to commit a mutiny, and to overthrow the lawful authority of the master and officers. But there must be a clear intent to produce such a revolt; and not merely gross or insolent language used by the party, which may, undesignedly, encourage others to such disobedience. The other count is for confining the master of the ship. This may be by a moral or a physical restraint, by threats of violence with a present force, which restrains the master from his freedom of movement or command in his ship, or by physical restraint of his person. In the present case, the defendant seized the master and held him back against the ship's rail, against his will. This is, therefore, in the sense of the act, a clear case of confinement of the master; and it matters not, whether it was for a long or a short time, for a minute, or for an hour, or a day. The law looks to the fact, and not to the duration of the confinement. But every confinement is not an offence within the act. It must be an illegal confinement or restraint. If the master is about to do an illegal act, and especially to do a felony, a seaman may lawfully confine or restrain him. So a seaman may confine the master in justifiable self-defence. If the master assault him without cause, he may restrain the master with so much force, and so long, as is necessary for this purpose. And, if he is suddenly seized by the master, and without any intention of restraining him of his liberty, from the mere impulse of nature, he takes hold of the master, to prevent any injury, for an instant, only, and as soon as he may, he withdraws the restraint, so that the act may be fairly deemed involuntary, it might not, perhaps, be deemed an offence within the act, even though the seizing by the master was strictly justifiable; for the will must co-operate with the deed. But if the seizing by the master be justifiable, and he does not exceed the chastisement, which he is by law entitled to. inflict, then the seaman cannot restrain him, but is bound to submit; and if he does hold the master in personal confinement or restraint, it is an offence within the statute. It is for the jury to say, how far the facts bring the case within the law thus laid down.

Verdict, guilty on the second count, not guilty on the first.

[See Case No. 8,919, where the misconduct of defendant herein was set up as a ground of forfeiture upon a libel by him to recover his share of the proceeds of the voyage.]