KERR v. SHINE, United States Marshal.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1905.)

No. 1,104.

CRIMINAL LAW—VENUE—OFFENSES COMMITTED ON THE HIGH SEAS—APPREHENSION.

Under Rev. St. § 730 [U. S. Comp. St. 1901, p. 585], providing that the trial of all offenses committed upon the high seas shall be in the district where the offender is found or into which he is first brought, an offender is to be tried in the district where he is apprehended, unless he is taken into custody while at sea, in which case he is to be tried in the district into which he is first brought. But to be "brought" into a district, within the meaning of the statute, one must be first apprehended, and it is not enough that he merely "arrive" in the district. Thus, where an offense was committed on the high seas, and the offender was not taken into custody until he was found and apprehended in one of the districts of California, he must be tried in that district, although the vessel on which the offense was committed had previously touched at Hawaii, and a complaint was filed and a warrant of arrest—which was returned unexecuted because of the offender's departure from the District of Hawaii before its attempted service—was issued there.

Appeal from the Circuit Court of the United States for the Northern District of California.

On June 5, 1904, a complaint was filed by F. Ramos before a United States commissioner for the District of Hawaii, charging John Kerr, the appellant herein, with having assaulted and beaten the complainant on May 19, 1904, on board the United States army transport Buford, on the high seas, within the admiralty and maritime jurisdiction of the United States, to wit, on the Pacific Ocean, and alleging that said appellant was an officer on said army transport, and a member of the crew thereof, and that said "District of Hawaii is the first district and jurisdiction into which said vessel has come since said 19th day of May, 1904." Thereupon said commissioner issued a warrant of arrest directing the United States marshal for the District of Hawaii to arrest the appellant. The marshal returned the warrant unexecuted, stating in his return that he could not find the appellant, who, he-

alleged on information, had departed from the District of Hawaii on June 4, 1904, the day before the filing of the complaint. On June 29, 1904, Benjamin L. McKinley, Assistant United States Attorney for the Northern District of California, filed a complaint before a United States commissioner for that district, alleging the assault as stated in the complaint of said Ramos, and stating further that said District of Hawaii was the first district and jurisdiction into which said vessel had come since said assault; that a complaint had been filed in said District of Hawaii as above stated, but that the appellant had fled from the District of Hawaii, and was now at large in the Northern District of California. A warrant was thereupon issued by the commissioner, and the appellant was arrested thereon, and upon a hearing had before said commissioner on June 29, 1904, he was held to answer on said charge before the United States District Court for the District of Hawaii. On July 1, 1904, said Assistant United States Attorney moved the District Judge for the Northern District of California for a warrant of removal of the appellant to the District of Hawaii on said charge. The motion was opposed by the appellant. The District Judge ordered the issuance of the warrant of removal directed to the United States marshal, the appellee herein. Thereafter, on July 2, 1904, the appellant presented to the Circuit Court of the United States for the Northern District of California his petition for a writ of habeas corpus, directed to the appellee, also a petition for a writ of certiorari. In his petitions he stated the facts which have been above set forth, and further alleged that the order of removal was not warranted by law, because the District Court of Hawaii had no jurisdiction to try said charge, that the proper trial court was the District Court for the Northern District of California. The writs were issued, and upon the hearing the Circuit Court made its order discharging both writs, holding that the appellant was not illegally restrained of his liberty. From that judgment the present appeal is taken.

William P. Humphreys, for appellant.

Benjamin L. McKinley, C. M. Fickert, and Marshall B. Woodworth, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The question presented on the appeal is whether the District Court of Hawaii acquired jurisdiction over the person of the appellant to try him for the alleged offense. The alleged offense was committed on an American vessel on the high seas. The appellant was not placed in custody on the vessel, nor was he brought into the District of Hawaii in the custody of any person or officer. Section 730 of the Revised Statutes [U. S. Comp. St. 1901, p. 585] provides:

"The trial of all offenses committed upon the high seas or elsewhere out of the jurisdiction of any particular state or district, shall be in the district where the offender is found, or into which he is first brought."

The first statute on this subject is in the crimes act of April 30, 1790 (1 Stat. 113, c. 9). The latter portion of section 8, c. 9, reads as follows:

"The trial of crimes committed on the high seas or in any place out of the jurisdiction of any particular state shall be in the district where the offender is apprehended or into which he may first be brought."

The act of May 15, 1820 (3 Stat. 600, c. 113, § 3), provides for the punishment of robbery on the high seas, and declares that a person

guilty of the acts defined "shall be adjudged a pirate and on conviction thereof before the Circuit Court of the United States for the district into which he shall be brought or in which he shall be found, shall suffer death." The act of March 3, 1825 (4 Stat. 118, c. 65, § 14), provides:

"And the trial of all offenses which shall be committed on the high seas, or elsewhere, out of the limits of any state or district, shall be in the district where the offender is apprehended, or into which he may be first brought."

The act of March 3, 1847 (9 Stat. 175, c. 51), provides for the conviction and punishment of persons guilty of piracy taken on the sea "before any Circuit Court of the United States for the district into which such person may be brought or shall be found." Undoubtedly the word "found" in section 730 of the Revised Statutes, and in the act of 1847 is used in the same sense with the word "apprehended," which is found in the crimes act of 1790, and in the act of 1825. The question, then, is, was the appellant "brought" into the District of Hawaii? The appellee contends that the appellant was carried into that district on the army transport, and was therefore brought there within the meaning of the statute. He cites and relies upon United States v. Thompson, 1 Sumn. 168, Fed. Cas. No. 16,492. In that case the defendant was charged with having committed an offense on the high seas against the crimes act of 1790. His ship arrived from her voyage first at Stonington, Conn., and thence sailed to New Bedford. The defendant was arrested at the latter place, and committed for trial. It was contended that the indictment ought to have been found in Connecticut, where the ship first arrived. Judge Story, without discussing the meaning of the word "brought," held that the provision of the crimes act is in the alternative, and that, therefore, the crime was cognizable in either district; and he observed that:

"There is wisdom in the provision, for otherwise, if a ship should by stress of weather be driven to take shelter temporarily in any port of the Union, however distant from her home port, the master and all the crew, as well as the ship, might be detained, and the trial be had far from the port to which she belonged, or to which she was destined. And if the offender should escape into another district, or voluntarily depart from that into which he was first brought, he would, upon an arrest, be necessarily required to be sent back for trial to the latter. Now, there is no peculiar propriety as to crimes committed on the high seas, in assigning one district rather than another for the place of trial, except what arises from general convenience; and the present alternative provision is well adapted to this purpose."

That case was decided in 1832. But in The United States v. Bird, 1 Spr. 299, Fed. Cas. No. 14,597, Judge Sprague in a similar case, said:

"By being brought within a district is not meant merely being conveyed thither by the ship in which the offender may first arrive, but the statute contemplates two classes of cases—one in which the offender shall have been apprehended without the limits of the United States, and brought in custody into some judicial district; the other, in which he shall not have been so apprehended and brought, but shall have been first taken into legal custody after his arrival within some district of the United States—and provides in what district each of these classes shall be tried. It does not contemplate that the government shall have the election in which of two districts to proceed to trial. It is true that in United States v. Thompson, 1 Sumn. 168, Fed. Cas. No. 16,492, Judge Story seems to think that a prisoner might be tried either in the district where he is apprehended or in the district into which he was first brought. But the objection in that case did not call for

any careful consideration of the meaning of the word 'brought,' as used in the statute; nor does he discuss the question whether the accused, having come in his own ship, satisfies that requisition. In that case the party had not been apprehended abroad, and the decision was clearly right, as the first arrest was in the District of Massachusetts."

In United States v. Baker, 5 Blatchf. 6, Fed. Cas. No. 14,501, a case which was tried before Mr. Justice Nelson and Judge Shipman, the defendants had been captured by an armed vessel of the United States off Charleston, S. C., for an offense committed on the high seas. The ship on which they were placed after their capture was destined for Hampton Roads. The prisoners were carried to that port, and after some two days' delay were transferred to another vessel, and taken to the port of New York, where they were arrested by the civil authorities. It was insisted on behalf of the prisoners that, inasmuch as they were first taken into Hampton Roads, the jurisdiction attached to the Eastern District of Virginia. Mr. Justice Nelson, in charging the jury, said:

"The court is inclined to think that the circumstances under which the Minnesota was taken to Hampton Roads, in connection with the original order by the commander that the prisoners should be sent to this district for trial, do not make out a bringing into that district within the meaning of the statute. But we are not disposed to place the decision on this ground. The court is of opinion that the clause conferring jurisdiction is in the alternative, and that jurisdiction may be exercised either in the district into which the prisoners were first brought, or in that in which they were apprehended under lawful authority for trial for the offense."

In that case, as in United States v. Thompson, there was no discussion of the meaning of the word "brought." The case of the United States v. Arwo, 19 Wall. 486, 22 L. Ed. 67, cited on behalf of both the appellant and the appellee, affords little, if any, light upon the question involved. Arwo was indicted in the Southern District of New York. He pleaded to the jurisdiction, alleging that immediately upon the commission of the offense he had been placed in irons on board the ship for custody, and was so kept until the vessel reached her anchorage in the Eastern District of New York. He was thence taken by harbor police officers to the city of New York, where he was delivered over to the United States marshal for the Southern District upon a warrant for his arrest issued to that officer. The question of the jurisdiction of the Circuit Court for the Southern District of New York, together with other questions, was certified to the Supreme Court. The Supreme Court, without discussing the propositions involved, or answering the other questions, expressed the opinion that the Circuit Court for the Southern District of New York had jurisdiction. The decision of the court in so ruling seems to have been controlled by the provisions of the act of February 25, 1865 (13 Stat. 438, c. 54), establishing the Eastern District of New York, giving it jurisdiction over the waters of the counties of Queens, Kings, and Suffolk, and providing that its jurisdiction as to "all matters made or done on such waters" should be concurrent with that of the court of the Southern District.

In Ex parte Bollman, 4 Cranch, 75, 136, 2 L. Ed. 554, Chief Justice Marshall expressed his understanding of the purport of the act of 1790 by saying that the statute "is understood to apply only to offenses com-

mitted on the high seas, or in any river, haven, basin, or bay not within the jurisdiction of any particular state. In those cases there is no court which has particular cognizance of the crime, and therefore the place in which the criminal shall be apprehended, or, if he be apprehended where no court has exclusive jurisdiction, that to which he shall be first brought, is substituted for the place in which the offense was committed." It may be urged against the force of this utterance of the court that the case did not call for an interpretation of the act, the offense having been committed not on the high seas, but in a territory of the United States; but, if the remarks of the learned chief justice are obiter, they furnish nevertheless an instructive exposition of the act as it was understood by the court at that early date, and they embody what we conceive to be its true meaning. In brief, the offender is to be tried in the district where he is apprehended; but, if he be taken into custody where no court has jurisdiction, he shall be tried in the district into which he is first brought. An offender on the high seas may be taken into custody while he is still at sea. Thus, for example, the act of March 3, 1819 (3 Stat. 532, c. 101; Rev. St. § 5560 [U. S. Comp. St. 1901, p. 3735]), gives authority to the commander of armed vessels of the United States to cause to be apprehended and taken in custody on the high seas all persons on board of vessels engaged in the slave trade. It could properly be said of a person so apprehended and brought to the United States that he was "brought" into a district within the meaning of the statute. It is not reasonable to suppose that Congress would have used the word "brought" in the various statutes above mentioned if its intention had been to grant jurisdiction of such offenses to the court of the first district into which, after the commission of the offense, the offender might arrive. He might arrive otherwise than upon the ship upon which he was at the time of the commission of the offense. He might arrive by other conveyance— as, for instance, in a rowboat propelled by himself, or in a sailboat sailed by himself. In such a case it could not be said that he was "brought." The appellant was an assistant engineer and an officer of the army transport, and as such came with his vessel into the District of Hawaii. It is more accurate to say that he brought the ship than that the ship brought him.

Again, if it be true, as suggested by Mr. Justice Nelson in the Baker Case and by Mr. Justice Story in the Thompson Case, that the clause conferring jurisdiction is in the alternative, and that jurisdiction may be exercised either in the district into which the offender is first brought or in that in which he is found, it would seem clear that the court acquiring jurisdiction of the offender by legal process would be the court possessed of jurisdiction to try him. The appellant was not in the District of Hawaii when the first complaint was filed there before the commissioner. He was not found in that district. He was apprehended in the Northern District of California. In that district jurisdiction over his person was first acquired, and there, it is our opinion, is the district in which he must be tried.

The judgment of the Circuit Court is reversed, and the appellant will be relegated for further proceedings to the commissioner's court in which the complaint was filed in the Northern District of California.