UNITED STATES of America, Plaintiff,

v.

John David PROVOO, Defendant.

United States District Court
S. D. New York.
May 12, 1954.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of New York, New York City, for plaintiff.

George A. Spiegelberg, New York City, for defendant-petitioner.

NOONAN, District Judge.

The petitioner has been convicted and sentenced by this court, and now seeks an order vacating and setting aside the original and corrected judgments of conviction, and discharging him; or, in the alternative, granting him a new trial. The former request for relief is based

on Title 28 U.S.Code, § 2255; the latter is based on Rule 33 of the Federal Rules of Criminal Procedure, Title 18 U.S. Code.

The appropriate portions of Section 2255 read as follows:

"§ 2255. *Federal custody; remedies on motion attacking sentence*

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate. * * *"

The pertinent provisions of Rule 33 are as follows:

"The court may grant a new trial to a defendant if required in the interest of justice. * * * A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case."

█ Thus, at the outset, it might be well to point out that, since the case in chief is now pending on appeal, this court is without authority to grant the motion for a new trial based solely on newly discovered evidence. Rule 33. We are limited to indicating our opinion as to the merits of the motion as we do at the conclusion hereof. Smith v. Pollin, 90 U.S. App.D.C. 178, 194 F.2d 349; U. S. v. Minkoff, 2 Cir., 181 F.2d 538. Thus, the jurisdiction of this court to grant the petitioner a new trial must rest on Section 2255.

The petitioner was convicted of four overt acts of treason committed in places outside of the jurisdiction of any particular state or district of the United States.

Article 3, Sec. 2, Clause 3 of the Constitution of the United States provides certain privileges, namely that:

"The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed."

Pursuant to this last provision, the First Congress enacted the first Crimes Act, April 30, 1790, c. 9, § 8, 1 Stat. 112, 114, the last part of which reads as follows:

" * * * and the trial of crimes committed on the high seas, or in any place out of the jurisdiction of any particular state, shall be in the district where the offender is ap-

prehended, or into which he may first be brought."

This statutory provision, varying only slightly through the years has come down to us today via the Act of 1825, 4 Stat. 118, c. 65, Sec. 14, Section 730 of the Revised Statutes, and Title 28 U.S. Code 1940 Ed. § 102. Having been included in the 1948 Revision of the Criminal Code, it became, and today still is, Title 18, U.S.Code, § 3238. This section reads as follows:

"The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district where the offender is found, or into which he is first brought."

That this section applies to offenses committed in a foreign country (including treason), as well as offenses committed at sea, is thoroughly settled by virtue of the interpretation of former section 102 of Title 28 (from which it is derived) in the leading case of U. S. v. Chandler, D.C., 72 F.Supp. 230, affirmed 1 Cir., 171 F.2d 921, certiorari denied 336 U.S. 918, 69 S.Ct. 640, 93 L.Ed. 1081, rehearing denied 336 U.S. 947, 69 S.Ct. 809, 93 L.Ed. 1103. It is, of course, true that many of the early cases concerned crimes committed on the high seas.

The issue of jurisdiction turns on the interpretation to be given to the words "found" or "first brought".

In the instant case, the petitioner was not in custody when he returned to the United States. He returned to the United States with the Army, received an Honorable Discharge, and re-enlisted in grade.

Subsequent to his re-enlistment, he remained in the United States; in fact, he had never left it again up to the time of his arrest after his discharge. The formal arrest took place at the point of discharge, Fort Jay on Governors Island in New York Harbor, where he had been brought by the Army from Fort Meade, Maryland.

It is thus essential to the jurisdiction, and hence the validity of the judgment of this court, that the petitioner be shown to have been "found" in this district. He alleges that he was "found" in Maryland by virtue of his claim that the Army took him into custody in Maryland, and brought him to New York for the sole purpose of having him tried here, and while it was acting as agent for the Department of Justice. That the petitioner never formally waived the venue requirement is clear.

It is apparent that the petitioner was not given a routine discharge unaffected by the desires of the Justice Department. The various exhibits annexed to the petition clearly establish this fact. Attention is especially called to Petitioner's Exhibit F.

Several factors seem clear, however. The Army would have discharged the petitioner regardless of the treason charge. The Justice Department had no authority to make the Army do anything it did not want to do. They are independent and equally exalted arms of the Executive branch of government. Since the petitioner was to be discharged anyway, the Army arranged to have it done in New York for the convenience of the Justice Department. The petitioner was not arrested or discharged by the Army for treason. He was not taken into custody by the Army for treason. The first official action taken against him for treason by way of arrest, taking into custody, etc., was done within the territorial limits of the Southern District of New York. The Army was not acting as the agent of the Justice Department, but rather was acceding to a request that the place of discharge be New York; accommodation is not agency. The first formal charges of treason were made in New York.

Getting back to the wording of the statute, there can be no argument that the petitioner was or was not "first brought" into any district. He came himself, and was not in custody in connection with the treason charge. There-

fore, it is the word "found" that must be considered. Pedersen v. U. S., 2 Cir., 271 F. 187; U. S. v. Townsend, D.C., 219 F. 761; Kerr v. Shine, 9 Cir., 136 F. 61. Note also page 3 of the Petition of Mr. Provoo, here being ruled upon.

The word "found" in the current statute has been held, by analogy to the wording in Revised Statutes, Section 730, to mean the same as the word "apprehended" or "first apprehended" in the 1790 and 1825 Acts. See Kerr v. Shine, and U. S. v. Townsend, supra.

As these words have been interpreted through the years, their meanings have gradually become clearer. One of the earliest cases involving this interpretation was Ex parte Bollman and Ex parte Swartwout (decided together), 4 Cranch 75, 8 U.S. 75, 2 L.Ed. 554, in the year 1807. The prisoners, petitioning for writs of habeas corpus in this matter, were both convicted of treason in connection with the grandiose schemes of Aaron Burr. They were convicted by the Circuit Court for the District of Columbia, and, in discussing the venue, Chief Justice Marshall, speaking for the court said: 4 Cranch at pages 135, 136.

> "That both of the prisoners were engaged in a most culpable enterprise against the dominions of a power at peace with the United States, those who admit the affidavit of General Wilkinson cannot doubt. But that no part of this crime was committed in the District of Columbia is apparent. It is, therefore, the unanimous opinion of the court that they cannot be tried in this district.

> "The law read on the part of the prosecution is understood to apply only to offenses committed on the high seas, or in any river, haven, basin or bay, not within the jurisdiction of any particular state. In those cases there is no court which has particular cognizance of the crime, and therefore, the place in which the criminal shall be apprehended, or, if he be apprehended where no court has exclusive jurisdiction, that to which he shall be

first brought is substituted for the place in which the offense was committed."

In the case of U. S. v. Thompson, 28 Fed.Cas. page 102, No. 16,492, 1 Sumn. 168, an 1832 opinion of the Circuit Court for the District of Massachusetts concerning a revolt of seamen on the high seas, Justice Story said:

> " * * * as to the second objection, the language of the crimes act of 1790 (chapter 36 [9], § 8) is, that 'the trial of crimes committed on the high seas, or in any place out of the jurisdiction of any particular state, shall be in the district where the offender is apprehended, or into which he shall first be brought.' The provision is in the alternative; and, therefore, the crime is cognizable in either district. And there is wisdom in the provision; for otherwise, if a ship should, by stress of weather, be driven to take shelter temporarily in any port of the Union, however distant from her home port, the master and all the crew, as well as the ship, might be detained, and the trial be had far from the port to which she belonged, or to which she was destined. And if the offender should escape into another district, or voluntarily depart from that, into which he was first brought, he would, upon an arrest, be necessarily required to be sent back for trial to the latter. Now, there is no peculiar propriety, as to crimes committed on the high seas, in assigning one district rather than another for the place of trial, except what arises from general convenience; and the present alternative provision is well adapted to this purpose."

In 1855, the District Court for the District of Massachusetts had before it a case where the alleged offense had occurred on the Mississippi River in Louisiana. In that case, U. S. v. Bird, 24 Fed. Cas. page 1148, No. 14,597, 1 Spr. 299, Judge Sprague said that:

> "If the offense be committed without the limits of the United States,

on the high seas, or in a foreign port, the trial must be had in the district 'where the offender is apprehended, or into which he may be first brought.' St.1790, c. 9, sec. 8 (1 Stat. 113, 114); St.1825, c. 65, section 14 (4 Stat. 118). By being brought within a district, is not meant merely being conveyed thither by the ship in which the offender may first arrive; but the statute contemplates two classes of cases, one in which the offender shall have been apprehended without the limits of the United States, and brought, in custody, into some judicial district; the other, in which he shall not have been so apprehended and brought, but shall have been first taken into legal custody, after his arrival within some district of the United States, and provides in what district each of these classes shall be tried. It does not contemplate, that the government shall have the election, in which of two districts to proceed to trial. It is true, that in U. S. v. Thompson (Case No. 16,492), Judge Story seems to think that a prisoner might be tried either in the district where he is apprehended or in the district into which he was first brought. But the objection in that case did not call for any careful consideration of the meaning of the word "brought," as used in the statute; nor does he discuss the question whether the accused, having come in his own ship, satisfies that requisition. In that case, the party had not been apprehended abroad, and the decision was clearly right, as the first arrest was in the district of Massachusetts. * * * "

In 1861, in the Circuit Court for the Southern District of New York, in the trial of members of the crew of a confederate ship for the robbery on the high seas of a union ship, Circuit Justice Nelson charged the jury in part as follows, U. S. v. Baker, 24 Fed.Cas. pages 962, 963, No. 14,501, 5 Blatchf. 6:

"The first question presented in this case is whether or not the court has jurisdiction of the offense. This depends upon the following clause in the 14th section of the Act of Congress of March 3d, 1825 (4 Stat. 118), as follows: 'And the trial of all offenses which shall be committed upon the high seas or elsewhere out of the limits of any state or district, shall be in the district where the offender is apprehended, or into which he may be first brought.' The prisoners, who were captured by an armed vessel of the United States, off Charleston, S. C., were ordered by the Commander of the fleet to New York for trial; but the Minnesota, on board of which they were placed, was destined for Hampton Roads, and it became necessary therefore, that they should be there transferred to another vessel. They were thus transferred to the Harriet Lane, and, after some two days' delay, consumed in the preparation, they were sent on to this port, where they were soon after arrested by the civil authorities. It is insisted, on behalf of the prisoners, that inasmuch as Hampton Roads, to which place the prisoners were taken, and where they were transferred to the Harriet Lane, was within the Eastern district of the state of Virginia, the jurisdiction attached in that district, as that was the first district into which the prisoners were brought. The court is inclined to think that the circumstances under which the Minnesota was taken to Hampton Roads, in connection with the original order by the commander, that the prisoners should be sent to this district for trial, do not make out a bringing into that district, within the meaning of the statute. But we are not disposed to place the decision on this ground. The court is of opinion that the clause conferring jurisdiction is in the alternative; and that jurisdiction may be exercised either in the district in which the prison-

ers were first brought, or in that in which they were apprehended under lawful authority for the trial of the offense."

Despite the above, recent cases have held that jurisdiction is not in the alternative, but rather that, where it involves one who was brought into a district, that district alone has jurisdiction.

In a case where prisoners were in custody following an arrest by a foreign government abroad and a return to this country on a U. S. Navy warship, the Circuit Court of Appeals for the Second Circuit held that the United States District Court for the Southern District of New York had jurisdiction of the matter where they were first actually arrested here upon landing. Pedersen v. U. S., supra.

Bouvier defines the word "apprehension" as "The capture or arrest of a person on a criminal charge." (8th Edition, 3rd Revision, Vol. 1, page 217).

There is nothing in the so-called "newly discovered evidence" supplied by the petitioner that leads to any conclusions not assumed at the time of the trial. It is better documented, but it boils down to a very simple statement of facts. The petitioner was brought to Fort Jay from Fort Meade, in custody, for a military purpose—that of discharge. Even if that military purpose was carried out in that manner for the convenience of the Department of Justice, it was still a military purpose.

█ █ He was never officially charged with or arrested for treason until he was arrested by the Federal Bureau of Investigation in New York. The Department of Justice could have arrested the petitioner at any time; military service gave him no immunity. Yet it chose to request and await his arrival in New York for reasons that are its own concern. Here, they arrested, apprehended or "found" him, whichever word you choose to call it.

█ The mere documentation of the allegation that the Justice Department requested that New York be the place where the petitioner was to receive his discharge establishes nothing that was not in all probability inferred by the jury when they learned of the promptness of his arrest after discharge. The point of jurisdiction had been raised before trial by way of a writ of habeas corpus dismissed by Judge Goddard, and while it is based on other arguments, and is not res adjudicata, Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356, it is still a factor to be considered.

This court concludes that the petitioner was "found" in New York by virtue of his arrest at Fort Jay. The documentation of the request by the Justice Department that he be discharged in New York does not affect the fact that he was so "found".

█ This court believes that this corroborative new evidence would not have affected the jury verdict as to venue, and that this court had jurisdiction to try the petitioner here. Therefore, the petitioner's motions must be, and hereby are, denied.

It is intended that this opinion be in lieu of findings of fact and conclusions of law unless further findings and conclusions are desired by either party. Otherwise submit order in accordance herewith.