**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Zhou LIANG, Defendant–Appellant.**

No. 99–10578

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 2000

Filed Sept. 13, 2000

Joseph E. Horey, of O'Connor, Berman, Dotts and Banes, for the appellant.

Gregory Baka, Assistant United States Attorney, District of the Northern Mariana Islands for the appellee.

**1058**

Before: LAY,[1] D. W. NELSON, and THOMAS, Circuit Judges.

D.W. Nelson, Circuit Judge:

### OVERVIEW

Appellant Zhou appeals his conviction for attempted alien smuggling to a place other than a designated port, in violation of 8 U.S.C. § 1324(a)(1)(A). Zhou's appeal challenges the district court's finding that venue was proper in the District Court for the Northern Mariana Islands ("CNMI"). Zhou contends that the proper venue of the case was the District of Guam. We agree and reverse the conviction.

### FACTUAL AND PROCEDURAL BACKGROUND

This undisputed facts of this case involve the crime of attempted alien smuggling. Defendant–Appellant Zhou Liang appeals his conviction pursuant to a plea agreement that reserved his right to appeal the denial of his Motion to Dismiss for Improper Venue. Zhou was the engineer of a vessel attempting to smuggle aliens from China into Guam. The vessel, known as "Yuan Yun 6802" had departed from the Fujjan Province in the People's Republic of China sometime in early April of 1999. A total of 103 Chinese national passengers were aboard, kept in a compartment underneath the main deck that was normally used for storing fish.

The vessel was the third interdicted out of five vessels over the period from April 15, 1999 to May 30. On April 28, 1999, the United States Coast Guard first intercepted the vessel less than 12 nautical miles from Guam. It fled in the direction of Guam at high speed, with the Coast Guard in pursuit. The Coast Guard ultimately disabled the boat's propeller and boarded the vessel less than 1 nautical mile from Guam's shoreline. Eventually, they took custody of the vessel, passengers and crew approximately 1000 yards from shore. Out of the three, it was the only boat to reach the 3–mile territorial waters of Guam when it was taken into custody.

On April 30, 1999 the vessel, passengers and crew were taken to Tinian in the Commonwealth of the Northern Mariana Islands, which is located 100 miles north of Guam and in a different federal judicial district. The U.S. government has leased the northern third of the island for military use. The persons captured were held on Tinian in a temporary camp, together with passengers from other Chinese boats which had also been apprehended approaching Guam. Eventually, all but two of the individuals aboard were repatriated to China without criminal charges.

On June 8, 1999, the Grand Jury handed down a three count indictment in the district of the CNMI against the two remaining co-defendants, Lin He Kang and Zhou Liang, charging three separate offenses: (1) Conspiracy to Commit an Offense Against the United States–Alien Smuggling for Financial Gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. §§ 2, 371, & 3278; (2) Attempted Alien Smuggling for Financial Gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and 18 U.S.C. §§ 2 & 3238; and (3) Attempted Alien Smuggling to a Place Other than a Designated Port in violation of 8 U.S.C. §§ 1324(a)(1)(A)(i) & 1324(a)(1)(A)(v)(II), and 18 U.S.C. §§ 2 & 3238. According to the Plea Agreement, the defendants knew that their passengers were aliens, and intended to land the ship on American soil so that the passengers could be unloaded at a place other than as designated by the Commissioner of the Immigration and Naturalization Service.

1. The Honorable Donald Lay, Senior Circuit Judge of the Eighth Circuit Court of Appeals, sitting by designation.

On July 2, 1999, Zhou filed a Motion to Dismiss for Improper Venue, which the district court denied on July 22, 1999. The district court concluded after a brief hearing that the defendants were first brought to the CNMI, and, therefore, the jurisdiction and venue were properly in the CNMI. About two weeks later, Zhou and the government reached a plea agreement in which he pled guilty to Attempted Alien Smuggling to a Place Other than a Designated Port-while reserving his right to challenge the denial of the motion to dismiss for improper venue on appeal. Pursuant to the plea agreement, the government dismissed the remaining two counts and agreed not to prosecute the case in Guam if venue turned out to be improper. On November 16, 1999, Zhou was sentenced to eighteen months imprisonment with credit for time served. He timely filed his notice of appeal on November 22, 1999.

## DISCUSSION

█ The single issue presented before the panel is whether venue was proper in the district court for the Northern Mariana Islands or Guam. We review the question of the existence of venue *de novo. United States v. Hernandez,* 189 F.3d 785, 787 (9th Cir.1999). The burden of establishing proper venue rests with the government. *See United States v. Angotti,* 105 F.3d 539, 541 (9th Cir.1997). Both parties agree that the relevant statute, for our purposes, is 18 U.S.C. § 3238, Offenses not committed in any district, which states that:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or District, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is

first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or any one of two or more joint offenders, or if no residence is known the indictment or information may be filed in the District of Columbia.

Zhou argues that the district court's interpretation of this statute conflicts with the Sixth Amendment's right to a trial by jury in the "state and district wherein the crime shall have been committed" and with Fed. R.Crim.P. 18's guarantee that "prosecution shall be had in a district in which the offense was committed."[2]

### A. Commission of the Offense

The district court interpreted the term "high seas," for the purposes of this case, as "all waters which are neither territorial seas nor internal waters of the United States or any foreign country." As a threshold matter, the parties disagree over *where* the offense was committed-on the high seas or in the territory of Guam. The Government argues that Zhou began to commit the offense of attempted alien smuggling upon leaving China, and continued to commit it until his apprehension off the coast of Guam. Zhou argues that he could not have committed the offense of alien smuggling until he actually reached Guam and that the Government's theory incorrectly conflicts with the holdings in *Yenkichi Ito v. United States,* 64 F.2d 73, 75 (9th Cir.1933) and *U.S. v. Hernandez,* 189 F.3d 785, 790.

█ The Government's position is the better one. There is substantial support in more recent Ninth Circuit case law and elsewhere that the offense of attempted

---

2. It bears noting, of course, that Zhou has stipulated his guilt to the crime of *attempted* alien smuggling. Therefore, for our purposes, it is irrelevant that various cases have required an actual landing on dry land to complete the offense of alien smuggling. *See Yang v. Maugans,* 68 F.3d 1540, 1549 (3rd Cir.1995); *cf. Chen Zhou Chai v. Carroll,* 48 F.3d 1331, 1343 (4th Cir.1995). Since it is undisputed that the offense of alien smuggling was not completed, we are concerned only with whether Zhou's conduct constituted a "substantial step toward commission of the crime." *United States v. Buffington,* 815 F.2d 1292, 1301 (9th Cir.1987).

alien smuggling can be committed extra-territorially and continue into Guam. In *United States v. Castillo–Felix*, 539 F.2d 9, 12 (9th Cir.1976), the court faced the question of whether venue was proper in Arizona, even though the acts constituting the crime of encouraging and inducing the unlawful entry of Mexican citizens took place entirely in Mexico. In that case, the court, citing *Brulay v. United States*, 383 F.2d 345 (9th Cir.1967), observed that:

Acts of inducing aliens to enter the United States or of counterfeiting alien registration receipt cards have no purpose unless they are intended to facilitate the unlawful entry of an alien or his continued illegal residence in the United States. The effect of such crimes committed out of the United States takes place in the United States, and, in terms of the regulation of immigration, it is unimportant where acts constituting the crime occur.

*Id.* at 12. *See also United States v. Chen*, 2 F.3d 330, 333–34 (9th Cir.1993) and *United States v. Aguilar*, 883 F.2d 662, 692 (9th Cir.1989)(both establishing extraterritorial application and enforcement of criminal statutes governing immigration). Therefore, we conclude that the nature of the offense of alien smuggling may dictate extraterritorial application. *See also United States v. Bowman*, 260 U.S. 94, 98, 43 S.Ct. 39, 67 L.Ed. 149 (1922), and *Hernandez*, 189 F.3d at 788.

■ Moreover, following *Castillo–Felix* and the cases listed above, we conclude that Zhou's offense of attempted alien smuggling *began* in the high seas and *continued* into the territory of Guam. Contrary to Zhou's observation, therefore, *Yenkichi Ito v. United States*, 64 F.2d 73, is distinguishable on its facts. In *Yenkichi Ito,* the court found that the defendants could not be convicted for attempting to. bring into the United States six aliens, because they had been seized forty miles from the coast of Southern California. Since they committed no illegal act *within* the jurisdiction of the United States, the court found that they could not be convict-ed of unlawfully attempting to bring in aliens:

Here no illegal act was committed by [the defendants] within the jurisdiction of the United States. The act committed was legal where committed and was potentially wrong only because coupled with an intent to consummate the act of landing the aliens within the United States. Hence, no substantive offense was committed by [the defendants] and appellant could not be properly convicted as their aider and abettor or for attempting, through them, to bring aliens into the United States not lawfully entitled to enter.

*Id.* at 75. Therefore, *Yenkichi*'s holding cannot apply because the criminal offense in this case took place on the high seas and continued into the territorial waters of Guam. *See United States v. Angcog*, 190 F.Supp. 696, 698 (D.Guam 1961)(observing the three-mile territorial waters of Guam). Following this conclusion, therefore, venue can *only* exist in Guam, because Zhou committed no crime in the CNMI.

**B.  Location of the Arrest**

To satisfy venue requirements under § 3238, the government must show that Zhou was "first brought to" or "arrested" in the CNMI. Zhou argues that irrespective of where he may have committed the offense of alien smuggling, he was arrested in the Territory and District of Guam, and entitled to venue in Guam instead. Zhou is correct.

■ We have followed the Second Circuit in finding that "brought" under § 3238 means "first brought into a jurisdiction [from outside the United States' jurisdiction] while in custody." *United States v. Hilger*, 867 F.2d 566, 568 (9th Cir.1989), citing *United States v. Catino*, 735 F.2d 718, 724 (2d Cir.), cert. denied, 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984). The term "first brought" applies only in situations where the offender is returned to the United States already in custody. *Catino*, 735 F.2d at 724. In *Catino*, in

circumstances similar to this one, the Second Circuit found that venue lay exclusively within the district where the defendant was *first* restrained in connection with the offense. *Id.*

Applying those principles to the facts of this case, we conclude that Zhou could not have been "first brought" to CNMI for the purposes of the statute because he was already interdicted in Guam. Since Zhou was already in United States territory when he was first intercepted, he was not technically "brought" into the CNMI under the statute.

Moreover, Zhou was not "arrested" in the CNMI. Following *Catino,* the term "arrested" is interpreted to mean that "venue is in that district ... where the defendant is *first restrained* of his liberty in connection with the offense charged." *Id., quoting United States v. Erdos,* 474 F.2d 157, 160 (4th Cir.1973)(emphasis added). This definition unmistakably implicates Guam, and not the CNMI, as the point of arrest, because that is where the vessel was interdicted and boarded, and where Zhou was taken into custody. Similarly, in *Erdos,* 474 F.2d at 160, the Fourth Circuit found that venue did not exist where an international flight made an unscheduled intermediate stop in the District of Massachusetts while en route to Virginia because the defendant was "not in custody." *Id.* at 161.

We therefore conclude that § 3238 cannot apply where the individual is first intercepted in one United States district and then transferred to another for trial. Indeed, the case before us falls squarely within the factual circumstances of both *Kerr v. Shine,* 136 F. 61, 62 (9th Cir.1905) and *United States v. Hernandez,* 189 F.3d 785 (9th Cir.1999). In *Kerr,* in interpreting a statute similar to the one before us, we observed that a defendant had to be tried in the district where he was first found. *Id.* at 65. More directly on point, in *Hernandez,* we found that venue was improper in the Western District of Washington where a defendant committed and completed the offense of being "found in"

the United States in Oregon. The Court observed:

> Nothing in the Constitution ... or the venue statutes supports the government's position that a defendant may be identified in one district as subject to prosecution under section 1326, transported under government auspices to another judicial district in the United States, and prosecuted there. Hernandez was "found" in Oregon, the crime was committed and completed there, and therefore, prosecution should have been in Oregon.

189 F.3d at 792. The same could easily be said for Zhou, who committed and completed the offense of attempted alien smuggling in Guam and not CNMI. As we recently observed in *United States v. Ruelas–Arreguin,* 219 F.3d 1056, 1061 (9th Cir.2000), "[p]ost-crime transportation of the defendant by the government did not make venue proper in the district where he was taken after arrest." There is no provision for new proper venues to be created after the crime is completed and the defendant apprehended in a prior district. *Id.*

"Where a defendant is not taken into custody before his arrival in this country, 'the purpose of the venue statute is not to fix the place of arrest but simply to have the place of trial conform to the place of arrest.'" *Catino,* 735 F.2d at 724, quoting *United States v. Provoo,* 215 F.2d at 538. Indeed, in *Provoo,* another case similar to this one, the Second Circuit observed:

> But the fact that when an offender has been arrested on the high seas or abroad, the Government may choose the district into which to bring him, does not seem an adequate reason for permitting the Government to take him into custody in a district where a Federal court exists with jurisdiction to try the alleged offense for which he is held in custody and then transport him to another district for trial there. The courts must take the statute as they find it and should not whittle away the "found" pro-

vision by a construction based on formalism rather than substance.

215 F.2d at 539. Consequently, since Zhou did not: (1) commit a crime in the CNMI; (2) was not arrested there; and (3) was not first brought to the CNMI, venue properly existed in Guam. The ordinary venue rule of trial in the district of the commission of the offense squarely applies to this case, and § 3238's "high seas" provision does not provide an alternative venue in CNMI.

### CONCLUSION

We therefore reverse the district court and dismiss the indictment. "When venue is improperly laid in a criminal case, dismissal is the appropriate remedy because a district court has no power to transfer such a case to a proper venue." *Hilger*, 867 F.2d at 568.

REVERSED.