UNITED STATES of America,
Plaintiff–Appellee,

v.

Li Xiang FENG, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Chen Biao, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Tu Yu Piao, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Hui Lin, Defendant–Appellant.

Nos. 00–50063, 00–50077,
00–50089, 00–50178.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 2, 2001.

Filed Jan. 18, 2002.

Robert L. Swain, Steven F. Hubacheck, Federal Defenders of San Diego, Inc., Brian P. Funk, Gregory D. Obenauer, San Diego, CA, for the defendants-appellants.

Patrick K. O'Toole, United States Attorney, Brian M. Pearce, Assistant United States Attorney, U.S. Attorney's Office, San Diego, CA, for the plaintiff-appellee.

Before: O'SCANNLAIN and PAEZ, Circuit Judges, and KING,* District Judge.

## OPINION

KING, District Judge.

Li Xiang Feng ("Feng"), Chen Biao ("Biao"), Tu Yu Piao ("Piao"), and Hui Lin ("Lin") appeal from their jury trial convictions for one count of conspiring to bring aliens into the United States in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(2)(B)(ii), and six counts of attempting to bring aliens into the United States for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2. We have jurisdiction under 28 U.S.C. §§ 1291, 1294(1), and affirm as to each Appellant on all issues addressed in this opinion.[1]

## I. Background

On August 27, 1998, the Coast Guard intercepted a fishing vessel, the *Chih Yung*, in international waters approximately 100 miles from San Diego and 100 miles off the coast of Northern Baja California, Mexico. The Appellants were among 174 aliens found on the vessel by the Coast Guard. The Immigration and Naturalization Service ("INS") agents and asylum officers boarded the vessel to conduct interviews. Many aliens informed government personnel of a smuggling arrange-

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

1. We affirm the district court's ruling on the other issues in a memorandum disposition filed separately.

ment in which they each were to pay around $30,000 once they reached the United States from China.

The vessel was detained for several weeks on the high seas. Following a criminal investigation, a federal grand jury in the United States District Court for the Southern District of California returned a 16–count indictment on September 15, 1998, against several defendants, including Appellants Feng, Biao, Piao, and Lin. Three days later, the Coast Guard brought the *Chih Yung* to San Diego. The INS took the aliens into custody, many of whom were offered immigration benefits in exchange for their testimony.

On January 29, 1999, the government filed a superseding indictment omitting several of the original defendants and adding counts under 18 U.S.C. § 1324(a)(2)(B)(ii). The case proceeded to trial by jury, beginning March 9, 1999. Appellants Feng, Biao, Piao, and Lin were convicted under the superseding indictment for one count of conspiring to bring aliens into the United States in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(2)(B)(ii), and six counts of attempting to bring aliens into the United States for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U .S.C. § 2. Appellants timely appealed.

## II. The Federal Anti–Gratuity Statute

The first issue we must decide is whether the government's offer of letters recommending asylum on behalf of testifying witnesses and guarantees of release without bond violated the federal anti-gratuity statute, 18 U.S.C. § 201(c)(2), and warranted suppression of the witnesses' testimony. We review questions of law de novo. *United States v. Michael R.*, 90 F.3d 340, 343 (9th Cir .1996).

The government claims it offered the letters based on the witnesses' fears of retaliation in China for testifying. The letters explained that the case was highly publicized in the United States and China and that the witnesses in custody and their families in China had already faced genuine threats to dissuade the witnesses from testifying. The recommendation to the INS was to permit the witnesses to remain in the United States for the indefinite future.

The anti-gratuity statute states in relevant part:

Whoever ... gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court ... authorized by the laws of the United States to hear evidence or take testimony ... shall be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c)(2).

■ Appellants argue that the government violated the statute because the immigration benefits received by the witnesses were "things of value" given in exchange for their testimony. The Ninth Circuit in *United States v. Smith,* 196 F.3d 1034, 1038–39 (9th Cir.1999), held, however, that § 201(c)(2) does not prohibit the government from conferring benefits upon cooperating witnesses in exchange for testimony. The court noted that "Congress would have legislated more expressly if it had intended for 18 U.S.C. § 201(c)(2) to prohibit the government from conferring immunity, leniency, and other traditionally permissible benefits upon cooperating witnesses in the course of a legitimate prosecution." *Id.* at 1039.

The court acknowledged that 18 U.S.C. § 201(c)(2) does not exclude the government and its agents in all cases. *See id.* "For example, 18 U.S.C. § 201(c)(2) might apply to a wayward prosecutor who bribes

a witness to lie on the stand." *Id.* at n. 5. Clearly, the government's behavior in this case is dis-similar to a wayward prosecutor bribing a witness to lie on the stand.

■ The question is whether immigration benefits or leniency should be differentiated from criminal leniency under 18 U.S.C. § 201(c)(2). The First Circuit disposed of the argument that immigration leniency is improper finding that " 'section 201(c)(2) does not apply at all to the federal sovereign qua prosecutor.' " *United States v. Murphy,* 193 F.3d 1, 9 (1st Cir. 1999) (quoting *United States v. Lara,* 181 F.3d 183, 187 (1st Cir.1999)). The court added that there "are surely outer limits on what a prosecutor can do in offering benefits to a witness," but that it "would not be inclined to view leniency in state proceedings or forestalling deportation as markedly different in character or consequence than a lesser sentence or no prosecution at all in the case at hand." *Id.*

■ We agree with the First Circuit's reasoning in *Murphy.* Furthermore, our sister circuits have repeatedly approved of the government's use of incentives to elicit relevant testimony, *see United States v. Flores,* 172 F.3d 695, 699–700 (9th Cir. 1999) (listing holdings of other circuits), and we find no compelling reason that incentives in the context of immigration should be treated any differently. Therefore, we hold that immigration leniency falls within the concept of "leniency" that is not prohibited by 18 U.S.C. § 201(c)(2).

■ Even if Appellants were correct in their assertion that the government violated 18 U.S.C. § 201(c)(2) by offering the witnesses leniency, there is no basis for transforming the statute into an exclusionary rule. In *Smith,* we held that the proper remedy for such a violation would be to prosecute the prosecutors whose conduct violated the terms of the statute. We noted that in addition to the fact that "[t]he use of the exclusionary rule is an exceptional remedy typically reserved for violations of constitutional rights," *id.* at 1040 (citing *United States v. Harrington,* 681 F.2d 612, 615 (9th Cir.1982)), the court cannot create a remedy when one is articulated by the terms of the statute itself. *Id.* (citing *United States v. Frazin,* 780 F.2d 1461, 1466 (9th Cir.1986)). We found that "18 U.S.C. § 201(c)(2) provides the mechanism for enforcing its provisions: criminal prosecution leading to imprisonment and/or fine." *Id.* Accordingly, we find that no violation of 18 U.S.C. § 201(c)(2) occurred and the district court did not err in not suppressing the testimony of the witnesses.

## III. Venue

■ Appellants next argue that venue was lacking under 18 U.S.C. § 3238, the federal venue statute for offenses committed on the high seas, or elsewhere out of the jurisdiction of any particular State or district. They argue that venue was improper because the government filed an indictment in the Southern District of California before they were arrested or first brought there. Questions as to proper venue are reviewed de novo. *United States v. Liang,* 224 F.3d 1057, 1059 (9th Cir.2000).

The statute provides as follows:

The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is *arrested or is first brought; but if* such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the *last known residence* of the offender or of any one of two or more joint offenders, *or if no such residence is known* the

indictment or information may be filed in the *District of Columbia.*

18 U.S.C. § 3238 (emphasis added).

■■■ To establish venue under the first clause of § 3238, the government must show that the Appellants were "first brought" to or "arrested" in the Southern District of California. *See Liang*, 224 F.3d at 1060. The word "brought" under the statute means "first brought into a jurisdiction[from outside the United States' jurisdiction] while in custody." *Id.* at 1061 (quoting *United States v. Hilger*, 867 F.2d 566, 568 (9th Cir.1989)). The term "arrested" in the statutory context means that " 'venue is in that district ... where the defendant is *first restrained* of his liberty in connection with the offense charged.' " *Id.* (quoting *United States v. Catino*, 735 F.2d 718, 724 (2nd Cir.1984)) (emphasis added).

The second clause of § 3238 regarding venue in a district of the last known residence of an offender or in the District of Columbia only applies "if such offender or offenders are not so arrested or brought into any district." 18 U.S.C. § 3238. Thus, the second clause provides an alternate basis upon which to establish venue in cases where venue has not been established under the first clause of the statute.[2]

■■■ We find that the government established venue under the first clause of 18 U.S.C. § 3238 because Appellants were first brought into the Southern District of California. Appellants rely on two cases with dissimilar facts to support their argument that venue could not be established in the Southern District of California under the first clause of 18 U.S.C. § 3238 because an indictment was returned before the Appellants were "first brought" into that district. According to Appellants, *United States v. Layton*, 855 F.2d 1388 (9th Cir.1988), *overruled on other grounds*, *United States v. George*, 960 F.2d 97 (9th Cir.1992) and *United States v.. Hilger*, 867 F.2d 566, 568 (9th Cir.1989) stand for the proposition that an indictment may be filed in the district to which the defendant is first brought, but if the indictment is returned before the defendant is brought to a district, that indictment is proper only in a district where at least one defendant is or was a resident or in the District of Columbia. This reading misinterprets the statute.

In *Layton*, an indictment was filed in the district of the offender's last known residence (the Northern District of California) before the offender entered the United States. *Layton*, 855 F.2d at 1410. Subsequently, the offender was "first brought" into a different district. *Id.* He was then taken to the Northern District of California and tried on the indictment that had been filed there. *Id.* We held that when venue is established under the second clause of 18 U.S.C. § 3238 by filing an indictment in the district of the offender's last known residence, and the offender is subsequently "first brought" into a different district, venue cannot be established under the first clause. *Id.* at 1411.

---

2. Before the statute was amended in 1963, venue under § 3238 was proper only in the district where the offender was "found" or into which he was "first brought." As discussed in *United States v. Layton*, 855 F.2d 1388, 1410–11 (9th Cir.1988), *overruled on other grounds, United States v. George*, 960 F.2d 97 (9th Cir.1992), one of the purposes for the amendment adding the provision for filing an indictment in the district of the offender's last known residence or otherwise in the District of Columbia was to prevent the running of the statute of limitations. Congress wanted to provide an alternate place to file an indictment and initiate criminal proceedings, other than in the district into which the offender was first brought, in a situation in which the offender, not clearly a fugitive, existed abroad or his location was unknown. *See id.*

*Layton* presents an entirely different set of facts than does this case. The present case involves an indictment filed in the district into which the defendants were first brought—not an indictment filed in the district of the last known address of the defendant, who subsequently was brought to a different district. The fact that the indictment in this case was filed before defendants actually entered the Southern District of California is of no consequence. It is not simply the filing of an indictment prior to the offender being arrested or first brought into the district that precludes the establishment of venue under the first clause of § 3238. Rather, it was the fact that venue had already been established under the second clause of § 3238 that precluded the government from "reestablishing" venue under the first clause.

■ In other words, unless the indictment itself establishes venue under the second clause, the fact that an indictment was filed before the offender was "first brought" to a district does not defeat venue there under the first clause. Here, the indictment filed before defendants were "first brought" into the Southern District of California did not establish venue under the second clause. Thus, *Layton* does not preclude venue in this case.

Like *Layton*, *Hilger* can be distinguished from the present case without focusing on whether the offenders were brought into a district before, after, or at the same time the indictment was filed. In *Hilger*, the indictment was filed in the Northern District of California, and Hilger was arrested in that district after he appeared there in compliance with a summons issued after the indictment was filed. *Hilger*, 867 F.2d at 567–68. Although Hilger was arrested in the Northern District of California, we held that he was not "arrested" in that district within the meaning of that term as used in 18 U.S.C.

§ 3238. *Id.* at 568. We found, therefore, that venue in the district under the first clause of the statute was improper. *See id.*

As in *Layton*, it was not the filing of an indictment prior to the offender being "arrested" or "first brought" into the district that precluded the establishment of venue under the first clause of § 3238. In *Hilger*, venue could not be established in the Northern District of California because the defendant had not been "arrested" in that district. Here, Appellants were "first brought" to the Southern District of California. Thus, regardless of whether Appellants were "first brought" into the Southern District of California before, after, or at the same time the indictment was issued in that district, venue was proper under the first clause of 18 U.S.C. § 3238.

AFFIRMED.