**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee*,

v.

RAMI GHANEM, AKA Rami Najm
Asad-Ghanem,
                *Defendant-Appellant.*

</td>
<td>

No. 19-50278

D.C. No.
2:15-cr-00704-
SJO-1


OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted February 12, 2021
Pasadena, California

Filed April 12, 2021

Before: Danny J. Boggs,[*] Milan D. Smith, Jr., and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Boggs

---

[*] The Honorable Danny J. Boggs, Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel vacated a conviction for conspiracy to violate 18 U.S.C. § 2332g, which prohibits illicit dealings in guided surface-to-air missiles; vacated the sentence; and remanded for further proceedings.

In an undercover sting operation, the Department of Homeland Security captured the defendant, a naturalized United States citizen, in Greece, and the government obtained an indictment against him in the Central District of California. Neither party disputes that all of the defendant's alleged conduct took place outside the United States.

The defendant contends that because he was "arrested" in Greece and "first brought" to the Eastern District of New York, venue under 18 U.S.C. § 3238 would lie only in the Eastern District of New York and was improper in the Central District of California.

The panel held that under Fed. R. Crim. P. 12, the defendant, who did not bring a pre-trial motion alleging improper venue, waived that venue challenge. The panel explained that because the venue defect is apparent from the face of the indictment, his first objection to venue—in his motion for acquittal after the close of the government's case—was untimely.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the defendant preserved his challenge to the propriety of the district court's jury instruction—that "[a]rrests, restraint or detention in a foreign country were irrelevant to [the jury's] determination of whether venue is appropriate in this district."  The panel wrote that according to this court's precedent, the defendant's Rule 12 waiver of venue did not preclude his separate jury-instruction challenge.

The panel reviewed de novo whether the instruction correctly stated the law, and explained that if a jury could reasonably find that the defendant's arrest in Greece was connected to the alleged § 2332g offense, the district court's instruction that foreign arrest, restraint, or detention was irrelevant to the jury's determination would have misstated the law.  The panel held that the instruction was erroneous because (1) the government has conceded in the district court that the conduct for which the defendant was arrested was very similar to that for which he was charged in the count at issue, (2) government agents were actively investigating the defendant at the time of his arrest for the conduct that would later be the basis of that count, and (3) the facts support a view that the government tried to manipulate venue in this case.  The panel concluded that the error was harmful because a reasonable juror could have found it more likely than not that the defendant's restraint in Greece really was in connection with the alleged § 2332g offense.

On plain error review, the panel disposed of the defendant's arguments (1) that § 2332g(b)(2)'s assertion of jurisdiction over him as a United States national does not apply to a conspiracy charge under § 2332g(c), or (2) that, if it does as a matter of correct statutory interpretation, then Congress does not have authority to legislate

extraterritorially on the basis of only United States nationality.

The panel held that the defendant waived his claim based on the doctrine of specialty by failing to raise it before trial without good cause.

The panel declined to order dismissal of the § 2332(g) charge based on the defendant's due-process challenges. The panel noted that citizenship alone is a sufficient connection with the United States to permit the application of its criminal laws to a citizen's conduct overseas. Lacking sufficient briefing, the panel deemed waived on appeal the defendant's due-process argument that he "justifiably relied on" an agreement he made with the Greek government not to appeal his extradition on the condition that he would be prosecuted only for the charges for which it surrendered him to the United States. The panel likewise deemed waived on appeal the defendant's argument that the government's ex parte request to the Greek government to consent to his prosecution for violating § 2332g violated due process because he lacked counsel or an opportunity to be heard.

## COUNSEL

Benjamin L. Coleman (argued), Coleman & Balogh LLP, San Diego, California, for Defendant-Appellant.

Alexander P. Robbins (argued), Assistant United States Attorney; L. Ashley Aull, Chief, Criminal Appeals Section; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

**OPINION**

BOGGS, Circuit Judge:

Rami Ghanem, a Jordanian-born, naturalized United States citizen, is an international arms dealer. The Department of Homeland Security captured him in Greece in an undercover sting operation, and the government obtained an indictment against him in the Central District of California in Los Angeles. After his extradition from Athens to Los Angeles (by way of New York), the government then brought additional arms-dealing charges against him, including 18 U.S.C. § 2332g, which carries a 25-year minimum sentence. Mr. Ghanem pleaded guilty to all but that one charge, which he tried to a jury. After the jury convicted him, the district court sentenced him to 30 years of imprisonment.

But the government tried Mr. Ghanem in the wrong place. When he landed at John F. Kennedy International Airport, in custody, venue was laid in the Eastern District of New York for the § 2332g charge even though the government had not yet brought it. The government later asked for an erroneous jury instruction on venue, which the court gave, over Mr. Ghanem's objection. Although Mr. Ghanem had waived his challenge to the indictment for improper venue by failing to bring it before the pretrial-motions deadline, under our precedent he was still entitled to a correct instruction on venue. The error was harmful, and we must therefore vacate his conviction.

## I. Background

### A. Arrest, Extradition, and Indictment

While living in Egypt, Mr. Ghanem ran a Jordanian company called Gateway to MENA (short for "Middle East and Northern Africa"), which dealt in military supplies and offered what he termed logistics services. His wares included body armor, a wide variety of weapons both small and large, ammunition, gadgets for electronic warfare, and so on. But his trade was not entirely on the up-and-up. He would smuggle armaments under false customs declarations, calling them "juice" or "fruits," and bribe officials for (or outright forge) the end-user certificates necessary for legal shipment of weapons.

Eventually, Mr. Ghanem's dealings came to the attention of Homeland Security Investigations (HSI). In 2014, an HSI undercover agent contacted Mr. Ghanem and began gathering evidence against him through email, Skype chats, and in-person meetings. In the meantime, in May 2015, a HSI special agent based in Los Angeles got a warrant to search Mr. Ghanem's Gmail account. By August 2015, Mr. Ghanem had placed an order through the undercover agent to illicitly export dozens of weapons, thousands of rounds of ammo, and three night-vision devices from the United States to Libya. On December 8, 2015, the undercover agent brought Mr. Ghanem to a warehouse in Athens, Greece, ostensibly to inspect the shipment as it was en route to Libya. Having been alerted by the United States, Greek authorities arrested him at the warehouse. Greek authorities seized numerous electronic devices from Mr. Ghanem's person and hotel room. The United States government would later take possession of those devices and examine them forensically.

Later that December, Mr. Ghanem was indicted in the Central District of California, where the shipment of purported weapons from the undercover agent had originated. The indictment alleged one count of violating the Arms Export Control Act (specifically, 22 U.S.C. § 2778(b)(2)), one count of smuggling, in violation of 18 U.S.C. § 554, and two counts of money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A).

In April 2016, Mr. Ghanem was extradited from Greece. Mr. Ghanem claims that he agreed not to appeal his extradition on the condition that he reserved his specialty rights—that is, to be prosecuted only for the charges specified in his extradition order. On April 25, 2016, the United States Marshals took him, in custody, by plane from Greece to JFK Airport in Queens, New York. After changing planes, he flew to Santa Ana, California. From there, he was detained in the Central District of California until trial.

On March 24, 2017, the government obtained a superseding indictment in the Central District of California, which added three new counts against Mr. Ghanem. (It obtained from the Greek government an extension of his extradition order—that is, permission to try him for these additional offenses beyond those listed in the original order.) The first new count was for conspiracy to violate the Arms Export Control Act, in violation of 18 U.S.C. § 371. The second was an additional substantive count of violating the Arms Export Control Act (specifically, 22 U.S.C. § 2778(b)(1)). And the third was for violating 18 U.S.C. § 2332g—the charge at issue on appeal.

Section 2332g, broadly, prohibits illicit dealings in guided surface-to-air missiles. Subsection (a) lists the specific banned conduct, subsection (b) specifies five so-called "jurisdictional" conditions, at least one of which must

be met for the conduct in subsection (a) to be criminal. And subsection (c) provides that "[a]ny person who violates, or attempts or conspires to violate, subsection (a) . . . shall be sentenced to a term of imprisonment not less than 25 years or to imprisonment for life."

Mr. Ghanem was charged with a conspiracy to violate subsection (a), and the jurisdictional hook alleged was his United States citizenship. In particular, he was charged with trying to procure or offering to sell Igla and Strela surface-to-air missiles and missile launchers. And from March to June of 2015, he allegedly sought operators for an Igla missile system, negotiated these operators' salaries (including bonuses for actually shooting down planes), and procured their travel to Libya.

## B.  The Proceedings Below

After the superseding indictment, there was extensive pretrial discovery (including three overseas depositions presided over by the district judge himself in Israel and Georgia) as well as several motions. Mr. Ghanem moved for a bill of particulars as to the § 2332g charge and to dismiss the indictment for alleged violations of due process—but, relevant here, he did not move to dismiss the indictment for improper venue. The district court denied those motions.

After the pretrial-motions deadline, the government moved the district court to take judicial notice of Mr. Ghanem's location at the time of his arraignment on count 3 of the superseding indictment. The court granted that motion. Finally, shortly before trial, Mr. Ghanem pleaded guilty to the other six counts against him, leaving only the § 2332g count for trial.

After the close of the government's eight-day case-in-chief, Mr. Ghanem moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal, raising the venue problem for the first time. The government responded that Mr. Ghanem had waived his venue objection by failing to raise it before the pretrial motions deadline under Federal Rule of Criminal Procedure 12(c). In the alternative, the government argued that venue was proper under 18 U.S.C. § 3238 because Mr. Ghanem was detained in the Central District of California when he was indicted and arraigned on the § 2332g charge; thus, it was there that he was first restrained of his liberty *in connection with that offense*. The district court denied the Rule 29 motion without elaborating on its reasoning.

In the meantime, the parties had been conferring on jury instructions. The government objected to Mr. Ghanem's proposed venue instruction and proposed one of its own. A few versions later, defense counsel eventually expressed no objection to the government's proposed venue instruction, which read, in relevant part: "The government must also show by a preponderance of the evidence that defendant was arrested, or first restrained of his liberty, in connection with this offense in the Central District of California." But after argument on the Rule 29 motion, the government expressed concern that Mr. Ghanem would argue his venue theory to the jury. The district court suggested that the government propose a jury instruction, which it did: "Arrests, restraint or detention in a foreign country is irrelevant to your determination of whether venue is appropriate in this district."

After the defense's brief case, the district court heard argument on the government's proposed addition to the venue instruction. The government argued that Mr. Ghanem

would mislead the jury by arguing that his arrest in Greece was in connection with the offense currently on trial. Mr. Ghanem objected to the instruction, contending that the government was well aware of any of his dealings in surface-to-air missiles by the time he was arrested. The district court found that the defense's argument would mislead the jury and agreed to give the government's revised instruction.

So instructed, the jury returned a unanimous guilty verdict after several hours of deliberations. Mr. Ghanem moved for a new trial under Federal Rule of Criminal Procedure 33 or to dismiss the indictment on several grounds, including improper venue, constructive amendment of the indictment, that the 25-year mandatory minimum sentence was cruel and unusual punishment, and the court's lack of jurisdiction under the extradition treaty between Greece and the United States. The district court denied these motions, holding that the venue and jurisdiction arguments were waived as untimely and also ruling against Mr. Ghanem on the merits.

Convicted of all seven counts, Mr. Ghanem's provisional offense level under the Sentencing Guidelines was 43. During the sentencing hearing, the district court sustained an objection by Mr. Ghanem, which brought the total offense level to 40. With a criminal history category of I, his Guidelines range was 292 to 365 months of imprisonment. The district court sentenced Mr. Ghanem, within that range, to 360 months.

This timely appeal followed.

## II.  Venue and Waiver

### A.  Background Principles

A criminal defendant enjoys the constitutional right to a trial in the correct place. U.S. Const. art. III, § 2, cl. 3; amend. VI. Normally that place is the state and district where the crime was committed. *Ibid.* But for crimes committed outside the country, the Constitution vests Congress with the power to determine the venue for trial. U.S. Const. art. III, § 2, cl. 3. In turn, Congress has determined that the trial for such a crime "shall be in the district in which the offender . . . is arrested or is first brought." 18 U.S.C. § 3238.

Neither party disputes that all Mr. Ghanem's alleged conduct took place outside the United States, so that § 3238 applies. Rather, Mr. Ghanem contends that he was "arrested" in Greece and "first brought" to the Eastern District of New York. Because Greece is, of course, not in the United States, venue under § 3238 would then lie only in the Eastern District of New York. Thus, Mr. Ghanem argues, venue was improper in the Central District of California, and we should vacate his conviction.

But the government contends that Mr. Ghanem waived his venue objection. This is because "a motion alleging a defect in instituting the prosecution, including . . . improper venue," must be made before trial if its basis is "then reasonably available" and it "can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)(i). A motion that does not meet that deadline is untimely, "[b]ut a court may consider [it] if the [movant] shows good cause." Fed. R. Crim. P. 12(c)(3). And we have held that a failure to timely raise a pretrial objection required by Rule 12, "absent a showing of good cause," constitutes a waiver—we will not

review the objection, even for plain error. *United States v. Guerrero*, 921 F.3d 895, 898 (9th Cir. 2019) (per curiam).

## B.  Apparency of a Venue Defect

There is good cause for a failure to raise a venue challenge before trial if no venue defect was "apparent on the face of the indictment." *United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1060 (9th Cir. 2000). In such a case, the earliest a defendant can raise the issue is in a Rule 29 motion for a judgment of acquittal at the close of the government's case-in-chief. A venue objection made then is therefore timely. *Ibid.*

An indictment does not have an apparent venue defect if "it allege[s] facts which, if proven, would have sustained venue" in the district of trial. *Ibid.* In this analysis, we consider only the allegations in the indictment, and we take them as true. *United States v. Mendoza*, 108 F.3d 1155, 1156 (9th Cir. 1997). Moreover, we must consider venue for each count separately, even if the same conduct is charged in multiple counts. *See United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1994) ("The court must conduct a separate venue analysis for the substantive crimes and the conspiracy, even if the substantive crimes are committed in furtherance of the conspiracy.").

Here, a venue defect is apparent from the face of the indictment. The only mention of the Central District of California in count 3 of the first superseding indictment is a statement that Mr. Ghanem "is currently located in the Central District of California." No overt act in count 3 is alleged to have occurred in any particular place, and no other facts are alleged in that count that would support venue under any of the venue statutes. *See* 18 U.S.C. §§ 3232–39; Fed. R. Crim. P. 18 ("Unless a statute or [the] rules permit

otherwise, the government must prosecute an offense in a district where the offense was committed."). Because mere presence in the district at the time of indictment does not support venue, count 3's defect was apparent.[1]

Lacking good cause, Mr. Ghanem's first objection to venue—in his motion for acquittal after the close of the government's case—was untimely, and he therefore waived that venue challenge.

### III.  The Jury Instruction on Venue

Mr. Ghanem also challenges the propriety of the district court's venue instruction—that "[a]rrests, restraint or detention in a foreign country is irrelevant to [the jury's] determination of whether venue is appropriate in this district."

---

[1] Judge Boggs, speaking for himself only: I concur somewhat *dubitante*. All the acts charged in count 3 of the superseding indictment were also alleged in count 1, which was alleged to have occurred "within the Central District of California, and elsewhere" between September 4, 2013, and December 8, 2015. Likewise, count 2 alleged that Mr. Ghanem "engaged in negotiating and arranging contracts, purchases, sales, and transfers of defense articles, foreign defense articles, defense services, and foreign defense services" "within the Central District of California, and elsewhere" between those same dates. Those articles and services included Igla and Strela "surface-to-air missile launchers" and "missiles" as well as "[o]perators," "[t]echnicians," and "[t]rainers for Igla surface-to-air missile launchers." Those are exactly the articles and services at issue in count 3. Given the overlap in charged conduct and the government's use of the conjunctive "and" in its location allegations in counts 1 and 2, I am less certain that the venue defect in count 3 is "apparent."

### A. Preservation Below

To preserve a jury-instruction objection, a party "must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Fed. R. Crim. P. 30(d). Mr. Ghanem did so here—before the jury was instructed, his counsel objected to the government's proposed revision, contending that Mr. Ghanem's arrest in Greece was in connection with the surface-to-air missile charges and therefore he had not been first deprived of his liberty in California. And he continues to press on appeal the same argument he made below: that he was not "arrested" in the Central District of California because he was not first restrained of his liberty there. Rather, he was arrested in Greece in connection with the entire arms-trafficking scheme, including the alleged § 2332g offense, so his overseas arrest is relevant to the jury's venue determination. He therefore preserved that challenge, and we review de novo whether the instruction correctly stated the law. *United States v. Renzi*, 769 F.3d 731, 755 (9th Cir. 2014).

Additionally, according to our precedent, Mr. Ghanem's Rule 12 waiver of venue does not preclude his separate jury-instruction challenge.[2] *United States v. Casch*, 448 F.3d 1115, 1117–18 (9th Cir. 2006). In *Casch*, the defendant did not raise a venue challenge until his objection to a lack of a "jurisdictional element" in the jury instructions. *Casch*, No.

---

[2] Several circuits have adopted a contrary rule. *See United States v. Perez*, 280 F.3d 318, 334 (3d Cir. 2002) ("An issue that has been waived because no one has objected to it should not at the same time be 'in issue' so as to require a jury instruction."); *see also United States v. Massa*, 686 F.2d 526, 530–31 (7th Cir. 1982); *United States v. Winship*, 724 F.2d 1116, 1125–26 (5th Cir. 1984); *United States v. Haire*, 371 F.3d 833, 840 (D.C. Cir. 2004), *vacated on other grounds*, 543 U.S. 1109 (2005) (mem.).

05-30270, Brief of Plaintiff-Appellee United States, 2005 WL 4668741, at *29–31 (Dec. 9, 2005). Even though he had waived his venue challenge under Rule 12, and despite the government's argument that waiver applied, *ibid.*, we did not find waiver of the jury-instruction challenge. Instead, we proceeded to the merits, and we found the district court's failure to instruct the jury on venue to be error, but we affirmed because the error was harmless. *Casch*, 448 F.3d at 1117–18.

## B.  Where Venue Lay Under § 3238

The parties do not dispute that the conduct charged in count 3 of the superseding indictment was committed "out of the jurisdiction of any particular State or district." 18 U.S.C. § 3238. Thus, the offense must be tried "in the district in which the offender . . . is arrested or is first brought." *Ibid.* The question becomes: which district or districts was Mr. Ghanem arrested in or first brought to? The answer turns on whether Mr. Ghanem's arrest in Greece was "in connection with" the § 2332g offense at issue in this appeal.

### 1.  "First Brought"

The district a defendant is first brought to is the district into which the defendant first comes "[from outside the United States' jurisdiction] while in custody." *United States v. Liang*, 224 F.3d 1057, 1060 (9th Cir. 2000) (alteration in original) (quoting *United States v. Hilger*, 867 F.2d 566, 568 (9th Cir. 1989)). The "first brought" portion of § 3238 applies only if the defendant "is returned to the United States already in custody," *ibid.*, in connection with the offense at issue, *United States v. Layton*, 519 F. Supp. 942, 943 (N.D. Cal. 1981). Thus, if the defendant is *not* in custody in connection with that offense when he enters the United

States, this provision does not apply. *See United States v. Erdos*, 474 F.2d 157, 160–61 (4th Cir. 1973) (holding that defendant was not in custody when plane to United States landed in Boston, hence venue did not lie in Massachusetts for overseas killing).

The length of time a defendant spends in the district to which he is first brought does not matter, nor does the purpose. *See Chandler v. United States*, 171 F.2d 921, 927, 932–33 (1st Cir. 1948) (holding that defendant was first brought to Massachusetts after plane transporting him, in custody, from Canada made emergency landing there); *United States v. Han*, 199 F. Supp. 3d 38, 49–50 (D.D.C. 2016) (holding that defendant was first brought to Hawai'i after plane transporting him, in custody, from American Samoa had layover in Honolulu). And flying through a district's airspace does not count; only landing there does. *United States v. Lozoya*, 982 F.3d 648, 652 (9th Cir. 2020) (en banc) ("Neither Article III nor the Sixth Amendment says that a state or district includes airspace, and there is, of course, no indication that the Framers intended as such."); *see also Chandler*, 171 F.2d at 932–33 (holding that defendant was not first brought to Maine even though plane carrying him, in custody, first crossed into United States airspace there).

## 2.  "Arrested"

The district a defendant is arrested in is the one "where the defendant is *first restrained* of his liberty in connection with the offense charged." *Liang*, 224 F.3d at 1061 (quoting *Erdos*, 474 F.2d at 160). In contrast to the "first brought" provision, this portion of § 3238 applies only if the defendant is already *inside* a district when first restrained of liberty in connection with the offense. *Kerr v. Shine*, 136 F. 61, 65 (9th Cir. 1905) ("[T]he offender is to be tried in the

district where he is apprehended; but, if he be taken into custody where no court has jurisdiction, he shall be tried in the district into which he is first brought."); *see also United States v. Townsend*, 219 F. 761, 762 (S.D.N.Y. 1915) ("The difference between 'brought' and 'found' is the difference between presence by involuntary and voluntary act.").

### 3. "In Connection With"

Here, it is undisputed that Mr. Ghanem was in custody when brought to the United States from Greece by air. And it is undisputed that he first landed in the Eastern District of New York before continuing on to the Central District of California.

What the parties dispute is whether Mr. Ghanem's custody at that time—resulting from his arrest in Greece—was in connection with the alleged § 2332g offense. If not, then he would have been arrested for that offense in the United States, and his arrest in Greece would have indeed been irrelevant to the jury's venue determination in the particular circumstances of this case. On the other hand, if a jury could have reasonably found that his arrest in Greece *was* in connection with the alleged § 2332g offense, then that finding would mean that he could *not* have been "arrested" under § 3238 for that offense in the Central District of California. Thus, if a jury could reasonably find that Mr. Ghanem's arrest in Athens was connected to the alleged § 2332g offense, the district court's instruction that foreign arrests, restraint, or detention was irrelevant to the jury's determination would have misstated the law.

### a. Precedent and Other Case Law

The precise contours of when a deprivation of liberty is in connection with an offense for the purposes of § 3238

have not been defined in this circuit. We therefore survey our cases and those of our sister circuits to ascertain these contours.

We start with *Liang*, which is binding on us. There, at the time the defendant was deprived of his liberty, his vessel had been interdicted and boarded—and he was taken into custody for suspected alien-smuggling—within the District of Guam. 224 F.3d at 1061. The government then took him to the District of the Northern Mariana Islands, where he was indicted several months later with three alien-smuggling offenses. *Ibid.* But because the defendant had been first detained in Guam, within the territory of the United States, we held that, for purposes of § 3238, he had been arrested there, not in the Northern Mariana Islands. *Ibid.* We therefore ordered his indictment dismissed for improper venue. *Ibid.*

In *Liang*, we quoted approvingly an out-of-circuit case, *United States v. Provoo*, 215 F.2d 531 (2d Cir. 1954). Distinctive in *Provoo* is that the government was already investigating treason allegations, with which the defendant was ultimately charged, even though the military was detaining him for alleged sodomy. The Army detained him for four months in Maryland before dropping the sodomy charge and taking the defendant to New York, where he was discharged from the service, handed over to the FBI, and charged with treason in the civilian courts. 215 F.2d at 538. The Second Circuit found that the Army's four-month detention of the defendant at the behest of the Justice Department was effectively an arrest for treason in Maryland. *Ibid.* Thus, venue under § 3238 did not lie in New York, and the treason conviction was vacated.

We also looked in *Liang* to another Second Circuit case, *United States v. Catino*, 735 F.2d 718 (2d Cir. 1984). There,

the defendant had been convicted of drug charges in the Southern District of New York but did not report for the start of his sentence, instead obtaining a passport under a false name and using it to travel to and from France. *Id.* at 719–20. French police eventually arrested him for heroin trafficking, and he was removed from France after serving a prison term there. *Id.* at 720–21. Upon his arrival in the Eastern District of New York, federal agents arrested him for additional drug charges based on his conduct while a fugitive. *Id.* at 721. But those charges were dropped, and he was taken to the Southern District of New York to begin serving his outstanding sentence on drug charges. *Ibid.*

While in custody in the Southern District, he was indicted for the domestic bail-jumping offense (for failing to report for the sentence he was currently serving). *Ibid.* Before his trial on that charge, a superseding indictment added a count of using a passport issued under a false name while in France. *Ibid.* The defendant moved to dismiss the superseding indictment, arguing that venue for the charge lay exclusively in the Eastern District, where he was "first brought" under § 3238. *Id.* at 723–24. The Second Circuit rejected this argument and held that the defendant's arrest in the Eastern District was for the subsequent drug-trafficking charges, not the overseas passport charge. *See id.* at 724. Rather, because the passport charge was added more than two years later for substantively different conduct than what led to his arrest upon returning from France, his first restraint of liberty in connection with the passport charge was actually in the Southern District, where he was serving his existing sentence when the passport charge was brought. *Ibid.* ("We need not concern ourselves with the term 'first brought,' as that applies only in situations where the offender is returned to the United States already in custody.").

In *United States v. Holmes*, 670 F.3d 586 (4th Cir. 2012), the Fourth Circuit took what it called an "offense-specific" approach, which it contrasted to an "indictment-specific" approach. *Id.* at 594–96. There, the defendant had been arrested in the Eastern District of Virginia on charges of sexual assault against his stepdaughter at an air force base in Japan, but the indictment was dismissed because he was still on active duty in the military, prohibiting his prosecution by civilian authorities. *Id.* at 589 & n.1. After his discharge from the Air Force, the government refiled the same charges in the same district, and the defendant was arrested in North Carolina and taken to the Eastern District of Virginia. *Id.* at 589. That indictment was dismissed—incorrectly, as it would later turn out—for lack of venue in the Eastern District of Virginia, and the government refiled the same charges hours later in that same district now that the defendant was present there in custody. *Id.* at 590.

The defendant appealed his eventual conviction, arguing that North Carolina was his place of first arrest on the charges because his initial arrest in Virginia was void because he was still in the military. *Id.* at 593. In answering the question of where the defendant had been first arrested, the Fourth Circuit held that "the relevant inquiry is not the district of arrest for a specific indictment in a case's procedural history, but rather the district of arrest for th[e] specific offense, even if there is a subsequent dismissal of the original indictment or filing of a subsequent indictment regarding that offense." *Id.* at 595. It found this analysis to "comport[] with the purpose of establishing venue"— allowing it "to be definitively determined based on the static location of where a defendant is determined to be 'first arrested or brought' with respect to the offense." *Ibid.* Otherwise there would need to be "reevaluation of [venue] at each stage of any subsequent procedural developments as

with subsequent or superseding indictments for the same offense." *Ibid.* Following this approach, the Fourth Circuit held that, because the defendant had initially been arrested in the Eastern District of Virginia, even though that arrest was improper, venue there was proper because the third indictment contained the same two charges as the first. *Id.* at 596–97.

The Fifth Circuit took a different, arguably "indictment-specific" approach in *United States v. Wharton*, 320 F.3d 526 (5th Cir. 2003). There, the defendant was arrested in the Middle District of Florida after prosecutors had filed a complaint in the Western District of Louisiana for conspiracy to murder his wife in Haiti and insurance-fraud charges based on that murder. *Id.* at 536. He was taken to Louisiana; while detained there, the government obtained a superseding indictment charging him with the foreign murder of his wife. *Ibid.* Looking to *Catino* as analogous, the Fifth Circuit held that the defendant's later indictment and arrest on murder while detained in the Western District of Louisiana was sufficient to lay venue for murder there, even though his previous arrest in Florida had been for conspiracy to murder the same victim. *Id.* at 536–37.

We also note a well-reasoned district court case, *United States v. Hong Vo*, 978 F. Supp. 2d 49 (D.D.C. 2013). There, the court held that, "for venue to lie in a particular district under the first clause of section 3238, a defendant must have been arrested or first brought in [sic] that district for the *same criminal conduct* as that which *ultimately gives rise* to the offenses charged, even if the charges are filed elsewhere." *Id.* at 60 (emphases added). The principal defendant had been arrested in Colorado on one count of conspiracy to commit bribery and visa fraud overseas. *Id.* at 51. Later, she was taken to the District of Columbia and indicted on

substantive counts of bribery and visa fraud. *Id.* at 52. The court dismissed the District of Columbia indictment, holding that the defendant's arrest in Colorado was in connection with the bribery and visa-fraud charges because the object of the conspiracy for which she had been arrested there was to commit those offenses. *Id.* at 62. Considering much the same body of case law as we do now, the district court expressly rejected *Wharton*, noting that the Fifth Circuit "did not explain why, when the defendant was arrested in Florida, he was not restrained 'in connection with' the foreign murder charge given the close factual link" to the conspiracy and insurance-fraud charges. *Id.* at 61. The district court further highlighted that "the link . . . between the charges at issue and the defendant's arrest [was] stronger than that in *Wharton*." *Ibid.*

A second defendant in *Hong Vo* had also been arrested in Colorado as a material witness. *Id.* at 51. When cooperation negotiations with the government broke down a few weeks later, that defendant was charged with conspiracy and later charged in the District of Columbia with bribery and visa fraud as a coconspirator. *Id.* at 51–52. The district court held that this defendant had also been arrested in Colorado in connection with those crimes, even though at the moment of arrest, the defendant had not been charged with any offense. *Id.* at 64. The court based this ruling on the fact that the government had considered the second defendant "to be a coconspirator and a target of the investigation." *Ibid.*

### b. Extracting Relevant Considerations

From our precedent and other case law, we can identify several factors indicating when an arrest meets the important condition of being in connection with a later-added offense.

### i. Centrality of a Later-Added Charge
### to the Reason for Arrest

First, if the later-charged offense is central to the reason for the initial arrest, then that arrest is in connection with that later-charged offense. We see this principle used in our own precedent. In *Liang*, the defendant was detained in Guam because government agents found him smuggling people into the United States, and the charges later brought in the Northern Mariana Islands were for three counts of alien-smuggling. 224 F.3d at 1061. Thus, his initial arrest was connected to those later charges.

Likewise in other circuits. In *Holmes*, the defendant was first arrested for abusing his stepdaughter overseas, and the charges in the third indictment were for the same conduct. 670 F.3d at 588, 590. The Fourth Circuit held that the defendant's initial arrest was in connection with the offenses charged in the third indictment. *Id.* at 596. And in the *Hong Vo* district-court case within the D.C. Circuit, we see the same principle. The court there recognized the inherent connection between an arrest for conspiracy and later-added charges for the substantive offenses underlying that conspiracy. *See* 978 F. Supp. 2d at 60 ("[T]he required connection is present because Hong Vo's initial arrest was very closely related to the bribery and visa fraud counts: she was arrested on a charge of conspiracy to violate certain statutes and subsequently charged in a superseding indictment with overt acts violating those same statutes, all based on the same criminal scheme.").

In contrast, if the later-charged offense is less central to the reason for the arrest, then the arrest is less likely to be in connection with the later-charged offense. Thus, in *Catino*, where the reason for the defendant's initial arrest (drug importation) differed substantially from the defendant's later

charge (passport fraud), venue was found to lie where the defendant was being detained once the later charge was brought. *See* 735 F.2d at 723–24. Of course, it is true that the passport fraud in *Catino* was *related* to the drug-importation charge—the defendant there used the fraudulently obtained passport to travel in and out of France while smuggling heroin, *Id.* at 720. But "connections, like relations, 'stop nowhere.'" *Maracich v. Spears*, 570 U.S. 48, 59 (2013) (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). The key is the centrality of the later-charged offenses to the initial arrest. The passport fraud with which Mr. Catino was later charged was not at the heart of the ongoing heroin smuggling for which he was initially arrested at the airport.

The government points to *Wharton* in trying to show that the centrality of the later-added charge to the reason for arrest is immaterial. But, like the *Hong Vo* court, we disagree with the *Wharton* panel's reasoning. The plot to murder Mr. Wharton's wife was central to the insurance-fraud scheme—indeed, the initial indictment charged the defendant with conspiracy to kill his wife in Haiti. Indictment, *United States v. Wharton*, No. 5:00-cr-50066-DEW-RSP (W.D. La. Sept. 25, 2000), Dkt. No. 1. And the foreign-murder charge was not brought with the initial indictment because the Attorney General had not yet authorized it. Minute Entry, *Wharton*, No. 5:00-cr-50066-DEW-RSP (W.D. La. Nov. 2, 2000), Dkt. No. 22. We cannot accept that an arrest for conspiracy to kill a person is unrelated to a later-added substantive charge of killing that person.[3]

---

[3] Nevertheless, we acknowledge that *Wharton*'s outcome was likely correct because the defendant had apparently waived his venue

## ii. Lapse of Time Between the Arrest and a Later-Added Charge

Besides the centrality of the conduct charged to the stated reason for arrest, another principle we may garner from the case law is that the length of time between the arrest and a later-added charge can indicate how connected the charge is to the arrest. A short gap often reflects a close connection between the initial arrest and later charge. *See Liang*, 224 F.3d at 1058 (less than two months between arrest and indictment); *Holmes*, 670 F.3d at 589–90 (seven months between first and second indictments); *Hong Vo*, 978 F. Supp. 2d at 51–52 (just over one month between arrests in Colorado and indictment in D.C.). *But see Wharton*, 320 F.3d at 536 (five months between arrest in Florida and superseding indictment adding murder charge in Louisiana). A long span of time tends to indicate the opposite. *See Catino*, 735 F.2d at 721, 724 (over two years between initial arrest for drug charges and later indictment for passport fraud; defendant still in custody for previously imposed prison sentence independent of either passport or new drug charges, not held on pretext).

## iii. Government Conduct

The substantive and temporal relationships between the arrest and the later-charged offense are not all that matters. The court must still inquire into the government's conduct, which may indicate the purpose of the arrest. For example, in *Provoo*, the Army kept the defendant in custody nominally for sodomy, only to drop that charge and turn him over to civil authorities in a different district for treason

---

challenge—the Fifth Circuit follows a similar, if not identical, rule to ours on the waiver of venue. *See Wharton*, 320 F.3d at 537 n.9.

allegations. Even though the alleged sodomy had no substantive relationship with the treason allegations, the Second Circuit held that it could not "blind [its] eyes to the fact that the real purpose in bringing [the defendant] to New York was to meet the wish of the Department of Justice to have him tried for treason under the indictment subsequently filed [t]here." 215 F.2d at 538.

Thus, evidence that a restraint of liberty is in connection with later-charged offenses includes active government investigation for those offenses at the time of the initial arrest. *See ibid.*; *accord Catino*, 735 F.2d at 720–21 (discussing the government's extradition request based on charges of importing heroin and conspiracy to import heroin, not passport violations); *see also Hong Vo*, 978 F. Supp. 2d at 64. *Contra Wharton*, 320 F.3d at 536–37 (holding that Florida arrest for insurance fraud and conspiracy to murder was unconnected to later substantive murder charge). Such evidence would also include continuing to detain the defendant on the offense of arrest despite unjustifiably delaying proceedings on that crime. *See Provoo*, 215 F.2d at 538. And the government's deliberate attempts to manipulate venue, as in *Provoo*, should draw great skepticism toward its claim that an arrest and later-added charge are unrelated. *See ibid.*

### c. The Government's Contrary Test

The government urges a different, bright-line rule. Under its test, Mr. Ghanem was first arrested for the § 2332g offense because he was in the Central District of California when the charge "came into being." But that test for whether an arrest is "in connection with" an offense is too narrow. And it comes with several problems.

First, it is foreclosed by our precedent. If the government's test were right, then *Liang* would have come out the other way. The charge there had not "come into being" until the defendant was in the District of the Northern Mariana Islands. 224 F.3d at 1058. Under the government's rule, venue would have lain there. But it did not—we held that the defendant was arrested in the District of Guam, where he was restrained of his liberty before he had been charged. *Id.* at 1062.

Second, the government has pointed to no case—in circuit or out—supporting the proposition that the government can bring a person into the country, already in custody on an offense committed abroad, and then select venue *afterward* using a superseding indictment for a related foreign crime. Even *Wharton*, to the extent that it used a test like the government's, does not support this proposition. The defendant there was not arrested until he was already inside the United States. 320 F.3d at 530–31.

Third, the government's test would violate the constitutional allocation of the power to set venue. The Constitution gives Congress primacy in selecting venue for crimes committed overseas. U.S. Const. art. III, § 2, cl. 3. But a rule that the defendant is arrested for such a crime only in the district where he is detained when the government chooses to add a charge—such a rule would give the government unchecked power to select venue. It could lay proper venue simply by taking an in-custody defendant to the district of its choice and obtaining a new indictment there.

It is no response that § 3238 already gives the government considerable discretion in picking venue. True, the government can bring an out-of-country defendant to any district of its choice by flying him directly there while in

custody, and venue would lie in that district. But the government cannot change its mind afterward, and its choice is constrained by practical and logistical concerns. And, more fundamentally, the point is that the government "must take the statute as [it] finds it," not "whittle away" its provisions "by a construction based on formalism rather than substance." *Liang*, 224 F.3d at 1061–62 (quoting *Provoo*, 215 F.2d at 539).

The government's "in connection with" test would do just that. That test would let the government take a defendant, already in custody in the Central District of California (whether brought there from outside the country or initially found and arrested there), to (say) Guam or Alaska, bring a superseding indictment there, and thereby lay venue. The constitutional purpose of our venue rules is to prevent exactly that from happening. Indeed, that was one of our grievances against George III—"For transporting us beyond seas to be tried for pretended offences." The Declaration of Independence, para. 21 (U.S. 1776). A bright-line rule allowing such a result is unconstitutional.

### d.  Application

We turn now to the crux of the matter: whether Mr. Ghanem's arrest in Greece was in connection with the alleged § 2332g offense. We hold that a jury could have reasonably found that it was, even under the preponderance standard to which the government must prove venue, *United States v. Moran-Garcia*, 966 F.3d 966, 969 (9th Cir. 2020).

First, the government itself has conceded the alleged § 2332g offense to be extremely similar to the conduct for which Mr. Ghanem was initially arrested. True, it was neither the exact charge alleged in the original indictment, as was the case in *Holmes*, nor a substantive count underlying

an inchoate offense, as in *Hong Vo*. But in arguing to admit Mr. Ghanem's plea colloquy on the other charges as evidence at trial, the government characterized the counts to which Mr. Ghanem had pleaded as "too similar in time and too similar in nature" to be excluded under Federal Rule of Evidence 403. Dist. Ct. Dkt. No. 427, at 14. It further described Mr. Ghanem as "engaged in overlapping conspiracies during a very discrete period of time, between the middle of 2014 on through 2015. During those conspiracies he engaged in the same type of conduct that he is alleged to have been committed [sic] with respect to" the § 2332g count. *Id.* at 14–15. What is more, the government filed a motion to join the original and superseding indictments, arguing:

> All of the charges in this case relate to defendant's work as an illicit broker of weapons, munitions and related services, and all are connected with defendant's common scheme of exporting, transferring, and brokering defense articles and defense services in violation of U.S. criminal law. There is a substantial overlap of evidence on the charges in each indictment, and of persons with whom defendant conspired to commit the offenses alleged in each indictment.

Dist. Ct. Dkt. No. 170, at 6. With these concessions, we are inclined to think that the alleged § 2332g offense is sufficiently central to the conduct for which Mr. Ghanem was initially arrested in Athens.

Second, the circumstances surrounding the arrest strongly suggest that the government was actively

investigating Mr. Ghanem's alleged surface-to-air-missile activities in the months before his arrest in Greece.[4]

Evidence of Mr. Ghanem's alleged dealings in Igla and Strela missiles came to the government through several sources. In March 2015, an undercover government agent had a conversation with Mr. Ghanem involving Igla missiles. In May 2015, an investigator with the Department of Homeland Security obtained a warrant to search Mr. Ghanem's Gmail account. From that search, he was able to identify several emails that the government later offered as evidence against Mr. Ghanem.

---

[4] The government's brief denies this, saying that "the evidence that defendant conspired to sell anti-aircraft missiles to Libyans was not discovered until after defendant had been arrested in the undercover operation. (GER 259, 292, 656, 687–688.)" Gov't Br. 36. ("GER" refers to "Government Excerpts of Record.") As the further discussion in this section will demonstrate, that proposition is inaccurate.

Moreover, the pages that the government's brief cites do not refute our finding. GER 259 is a page of trial transcript. There, HSI Special Agent Peterson describes government trial exhibit 201 as an email "sent from the defendant's gmail account . . . dated *May 14, 2016*" (emphasis added). But that is either a transcription error or an accurate transcription of the witness's factual error. The government submitted a copy of exhibit 201 along with its brief in this court. The exhibit plainly states "Sent: Tuesday, *May 6, 2014* 1:52 AM." (emphasis added). Also, as the government acknowledged in its brief, Mr. Ghanem had already been arrested in December 2015. It seems unlikely that in 2016 he still had access to his Gmail account from a California jail cell.

The other GER citations for the government's proposition refer to devices seized from Mr. Ghanem at his arrest. But the fact that the government found evidence on these devices does not negate that it had access to Mr. Ghanem's Gmail account months before the arrest.

For example, government trial exhibit 201 was an email from Mr. Ghanem, sent in May 2014, with a PDF attachment advertising his company. The attachment offered to manage "[a]ntiaircraft missile launching, artillery and antiaircraft systems" among other services. And alongside more modest wares such as metal detectors, gelatinized dynamite, and self-propelled Howitzers, the attachment specifically advertised a "9M-32M STRELA 2M Portable Anti-aircraft Missile System," a "9M-36 STRELA 3 Portable Anti-aircraft Missile System," a "9M-310 IGLA 1E Portable Anti-aircraft Missile System," and a "Set of Control equipment and Launch modules for the IGLA-type missile."

The government entered into evidence several other emails from Mr. Ghanem, sent in 2013 and 2014, concerning transactions involving Igla and Strela missiles. Not to mention emails either sent or received by Mr. Ghanem in March and April 2015 discussing the specific Igla-operator transaction charged in count 3 of the superseding indictment. Overall, the record makes clear that the government was aware of and investigating Mr. Ghanem's alleged missile transactions well before his arrest in Greece.

Given that active investigation, the government's one-year delay between Mr. Ghanem's arrest and the later indictment bringing the § 2332g charge does not significantly diminish the connection between the two. The government continued its investigation after the arrest—it performed a forensic analysis of the devices seized from Mr. Ghanem by the Greek authorities, and the same HSI special agent got another warrant to access Mr. Ghanem's Gmail account in September 2016. The government used that investigation time to bolster its § 2332g charge. In fact, emails from Mr. Ghanem's Gmail account from later than May 2015 were introduced against him at trial regarding the

Igla-operator transaction. So, even though it took somewhat longer for the government to bring the § 2332g charge than in many of the cases we surveyed above, the arrest and offense remain connected.

Third, the government also appears to have been aware of its venue problem. Count 3 of the superseding indictment expressly tried to tie venue to Mr. Ghanem's presence in the Central District of California at the time of indictment. And the government's inaccurate statement of the record on appeal, noted in the footnote above, further suggests its awareness of the potential defect in venue. Taken together, these facts all suggest that the government deliberately took advantage of its theory of venue to bring the § 2332g charge in the wrong district. The government's claim—that the arrest and later-added charge were unrelated—should therefore be viewed with great skepticism.

Thus, because (1) the government has conceded in the district court that the conduct for which Mr. Ghanem was arrested was very similar to that for which he was charged in count 3 of the superseding indictment, (2) government agents were actively investigating Mr. Ghanem at the time of his arrest for the conduct that would later be the basis of that count, and (3) the facts support a view that the government tried to manipulate venue in this case, we hold that the jury could have reasonably found it more likely than not that Mr. Ghanem's arrest in Greece was connected to his alleged violation of § 2332g. Thus, the district court's instruction—that foreign arrests, restraint, or detention were irrelevant to the jury's venue determination—was erroneous.

## C.  Harmfulness

Having found erroneous the instruction directing the jury to disregard foreign arrests, we now determine whether that

error was harmful. *United States v. Kleinman*, 880 F.3d 1020, 1034 (9th Cir. 2017). It was.

Because the right to trial in the proper venue is constitutional, we deem an erroneous venue instruction harmful unless the government shows beyond a reasonable doubt that the error was harmless. *See id.* at 1034–35. That is, the government must show that there was no "reasonable possibility that the error materially affected the verdict." *United States v. Valle-Valdez*, 554 F.2d 911, 914–15 (9th Cir. 1977); *Chapman v. California*, 386 U.S. 18, 23–24 (1967).

If the court had not given the erroneous venue instruction, there is a reasonable likelihood that the jury may have acquitted Mr. Ghanem. Without the instruction, Mr. Ghanem would have been able to argue that the first restraint of his liberty in connection with the alleged violation of § 2332g was in Athens, not Los Angeles. Such a finding would preclude a finding that he was first arrested for the offense in the Central District of California, refuting the government's venue theory. And, as we just held, a reasonable juror could have found it more likely than not that his restraint in Greece really was in connection with the alleged § 2332g offense. That is enough to say that the error was harmful.

## D.  Some Remarks

We recognize the peculiarity of this result. An acquittal based on venue—to which jeopardy would attach—would have been a reasonable jury verdict (assuming proper instructions), but Mr. Ghanem was not entitled to a dismissal of the indictment under a Rule 29 motion. That strangeness arises from this case's particular legal posture. Mr. Ghanem waived his venue challenge because it was untimely, so he

could not ask the district court to "take the venue issue from the jury and determine it as a matter of law," as was done in *United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012). But, as noted above, our precedent entitles a defendant, even one who has waived venue by untimeliness, to a correct jury instruction on the question. *See Casch*, 448 F.3d at 1117–18.

In future cases with similarly muddled postures, a district court might consider using a special-verdict form requiring a venue finding separate from substantive guilt. That would reduce a defendant's incentive to sandbag a venue defect by failing to raise the issue pretrial but then attempting to win an acquittal by later requesting a venue instruction.

## IV.  Other Claims on Appeal

We now dispose of Mr. Ghanem's remaining claims.[5]

### A.  Extraterritoriality

Mr. Ghanem argues that § 2332g(b)(2)'s assertion of jurisdiction over him as a United States national does not apply to a conspiracy charge under § 2332g(c) or that, if it does as a matter of correct statutory interpretation, then Congress does not have authority to legislate extraterritorially on the basis of only United States nationality. He did not preserve these claims below, so we

---

[5] We note that we need not consider his other jury-instruction challenges. The most relief he could get on those grounds is vacatur of his conviction, which we already grant because of the erroneous venue instruction.

review them for plain error.[6] *United States v. Lindsay*, 931 F.3d 852, 864 (9th Cir. 2019). To be plain, an error must be "clear" or "obvious." *United States v. Olano*, 507 U.S. 725, 734 (1993). It cannot be plain if "there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011) (quoting *United States v. Charles*, 581 F.3d 927, 933–34 (9th Cir. 2009)).

The statute is clear that conduct listed in subsection (a) by a United States national outside of the United States violates § 2332g(a) and that a conspiracy to violate § 2332g(a) is punishable as provided in § 2332g(c)(1). Thus, a conspiracy to cause a United States national to perform conduct listed in subsection (a) outside the United States is punishable under subsection (c)(1). Here, Mr. Ghanem is a United States national, and the alleged conspiracy's object was for Mr. Ghanem, among others, to perform precisely the conduct listed in subsection (a). Thus, count 3 of the

---

[6] Mr. Ghanem is incorrect in asserting that these claims automatically receive de novo review because they are "jurisdictional" and in asserting that his pretrial motion to dismiss the indictment preserved the issues. First, although the elements of § 2332g(b) are styled "jurisdictional," extraterritoriality is not a question of subject-matter jurisdiction—so long as he is charged with a federal crime, the district court has subject-matter jurisdiction to hear his case, whether or not the statute defining the crime was constitutionally enacted. 18 U.S.C. § 3231. So, unlike a dispute over subject-matter jurisdiction, Mr. Ghanem's extraterritoriality claims cannot be raised at every point in the proceedings. Second, his motion below did not contain the statutory and constitutional claims now raised—it asserted due-process claims based on the Fifth Amendment. So the statutory and constitutional claims were not preserved.

superseding indictment falls squarely within the scope of
§ 2332g(c)(1).

Mr. Ghanem advances the canon of constitutional
avoidance to avoid this outcome, but that canon "comes into
play only when, after the application of ordinary textual
analysis, the statute is found to be susceptible of more than
one construction." *Nielsen v. Preap*, 139 S. Ct. 954, 972
(2019) (quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 842
(2018)). Because the statute is unambiguous, we do not
resort to the canon.

As for the argument that Congress does not have the
constitutional authority to criminalize such conduct, the
parties have provided no controlling authority on point, and
the most closely analogous precedent is at least conflicting,
if not mostly against Mr. Ghanem. *See, e.g.*, *United States v.
Clark*, 435 F.3d 1100, 1114 (9th Cir. 2006) (upholding
criminalization of foreign commercial sex acts with minors
by United States nationals under Foreign Commerce
Clause), *superseded on other grounds by statute as stated in
United States v. Pepe*, 895 F.3d 679 (9th Cir. 2018); *Lindsay*,
931 F.3d at 862 (holding the same for foreign
*non*commercial sex acts with minors by United States
nationals but citing the "different outcomes" on the question
throughout the country). Thus, even if Congress could not
criminalize Mr. Ghanem's alleged conduct here, the error
below would not be plain.

## B.  The Doctrine of Specialty

As with his venue claim, Mr. Ghanem waived his claim
based on the doctrine of specialty by failing to raise it before
trial without good cause. Fed. R. Crim. P. 12(b)(3)(A), (c),
(e); *United States v. Anderson*, 472 F.3d 662, 668–70 (9th
Cir. 2006). The pretrial motion he cites as preserving his

personal-jurisdiction challenge instead asserted a due-process claim. And his argument that the doctrine of specialty is a "jurisdictional" challenge that can be raised at any time under Rule 12(b)(2) is mistaken. Rule 12(b)(2) is limited to challenges based on subject-matter jurisdiction, not personal jurisdiction as the doctrine-of-specialty claim is. *See Anderson*, 472 F.3d at 668; *see also United States v. Isaac Marquez*, 594 F.3d 855, 858–60 (11th Cir. 2010). Last, neither *United States v. Liu*, 731 F.3d 982 (9th Cir. 2013), nor *Anderson* supports a finding of good cause here. *Liu* was not concerned with Rule 12 waiver. And *Anderson* involved a pro se defendant who had not received a copy of his extradition order until appeal, 472 F.3d at 670, in contrast with Mr. Ghanem, who is represented by counsel and received a copy of his extradition order well before trial.

## C.  Due Process

Mr. Ghanem contends that due process and fundamental fairness require the dismissal of count 3 of the superseding indictment. He preserved this claim below, so we review it de novo. *United States v. Morris*, 633 F.3d 885, 888 (9th Cir. 2011) (per curiam).

Mr. Ghanem is correct, of course, that a prosecution of extraterritorial conduct must provide due process. U.S. Const. amend. V. We have previously held that there must be a sufficient connection between the defendant and the United States that applying a criminal law to his extraterritorial conduct "would not be arbitrary or fundamentally unfair." *United States v. Davis*, 905 F.2d 245, 248–49 (9th Cir. 1990). He urges that the only connection between him and the United States for purposes of § 2332g was his status as a naturalized citizen, and he contends that this connection is too weak to support due process.

We have already rejected that argument. Citizenship alone is a sufficient connection with the United States to permit the application of its criminal laws to a citizen's conduct overseas. *Clark*, 435 F.3d at 1108–09.

Mr. Ghanem also argues that he "justifiably relied on" an agreement he made with the Greek government not to appeal his extradition on the condition that he would be prosecuted only for the charges for which it surrendered him to the United States. Because the initial charges were for lesser crimes with Guidelines ranges of 78 to 97 months, he contends that the government's later addition of the § 2332g charge, with a potential Guidelines range of life imprisonment, violated his reliance interest in the agreement not to challenge extradition. The government responds that the Greek government later consented to Mr. Ghanem's prosecution for this offense.

Mr. Ghanem did not raise this argument in his pretrial motion to dismiss for due-process violations, and the government claims that it is waived. Despite the Supreme Court's pronouncement that "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below," *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (alteration in original) (quoting *Yee v. Escondido*, 503 U.S. 519, 534 (1992)), our precedents are in apparent conflict over whether a particular argument supporting a claim can be waived.[7]

---

[7] *Compare Guerrero*, 921 F.3d at 898 ("Rule 12(c)(3)'s good-cause standard continues to apply when . . . the defendant attempts to raise new theories on appeal in support of a motion to suppress."), *and United States v. Restrepo-Rua*, 815 F.2d 1327, 1329 (9th Cir. 1987) (per curiam)

But we need not resolve that apparent conflict here because even if Mr. Ghanem preserved his argument, he provides no authority to support its merits. He cites only two cases, *Santobello v. New York*, 404 U.S. 257 (1971) (sans pincite), and *United States v. Shapiro*, 879 F.2d 468, 470–72 (9th Cir. 1989). These cases concern only whether the government may renege on a plea agreement with a defendant, not the due-process implications of the government's failure to abide by a foreign country's bargain. Nor does *United States v. Barona*, 56 F.3d 1087, 1091 (9th Cir. 1995), cited in Mr. Ghanem's reply brief, bear on this question—*Barona* was about searches and seizures in foreign countries and whether they "shock the conscience" or fail to comply with foreign law. Lacking sufficient briefing on this due-process argument, we deem it waived on appeal and do not pass on its merits.

We likewise deem Mr. Ghanem's final due-process argument waived on appeal. He argues that the government's ex parte request to the Greek government to consent to his prosecution for violating § 2332g violated due process because he lacked counsel or an opportunity to be heard. But he cites only *Barona*, 56 F.3d at 1091, and *United States v. Hamilton*, 391 F.3d 1066, 1069–71 (9th Cir. 2004), in support. Neither case says anything about whether a criminal defendant is entitled to counsel or to notice of or an

---

("Just as a failure to file a timely motion to suppress evidence constitutes a waiver, so too does a failure to raise a particular ground in support of a motion to suppress."), *with United States v. Walton*, 881 F.3d 768, 771 (9th Cir. 2018) (reviewing de novo a sentencing claim for which the defendant presented a different argument on appeal from the one made in the district court); *United States v. Studhorse*, 883 F.3d 1198, 1203 n.3 (9th Cir. 2018) (same), *and United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) (reviewing de novo denial of motion to dismiss indictment despite defendant's new argument on appeal).

opportunity to be heard in government interactions with foreign countries.

We therefore decline to dismiss the § 2332g charge for a violation of due process.

## V.  Conclusion

We vacate Mr. Ghanem's conviction on count 3 of the superseding indictment, vacate his sentence, and remand for resentencing and further proceedings consistent with this opinion.

**VACATED and REMANDED.**